**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Gutberto BELTRAN–GUTIERREZ,**
**Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jose BELTRAN–CARDENAS,**
**Defendant–Appellant.**

**Nos. 93–10146, 93–10147.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted February 9, 1994.

Decided March 22, 1994.

Sandra Lynn Slaton, Slaton Law Offices, Phoenix, AZ, for defendant-appellant (Beltran–Gutierrez).

Jared O. Smith, Tempe, AZ, for defendant-appellant (Beltran–Cardenas).

Mary H. Murguia, Asst. U.S. Atty., Phoenix, AZ, for plaintiff-appellee.

Before: ALARCON and FERNANDEZ, Circuit Judges, and WILSON, District Judge.*

* Honorable Stephen V. Wilson, United States District Judge for the Central District of California, sitting by designation.

ALARCON, Circuit Judge:

Gutberto Beltran–Gutierrez (Gutierrez) appeals from the judgment of conviction for conspiracy to possess with intent to distribute heroin and possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(i), and 18 U.S.C. § 2. He contends that his Fifth Amendment privilege against self incrimination was violated because the prosecutor introduced his suppression hearing testimony on the issue of guilt at trial. We affirm because the record shows that the prosecutor did not present this evidence in its case in chief or to prove that Gutierrez was guilty. In an unpublished memorandum decision filed today, we address the remainder of Gutierrez's challenges to the judgment of conviction and the sentencing decision.

## I. FACTS

The evidence, viewed in the light most favorable to the Government, disclosed the following facts: With the assistance of an informant, Drug Enforcement Administration Task Force Agents (agents) arranged to purchase eight ounces of heroin from Jose Beltran–Cardenas (Cardenas). On April 7, 1992, the agents came to Cardenas' apartment complex to complete the sale. When they arrived, Cardenas introduced Gutierrez to the agents and each of them entered Cardenas' apartment. Agent Rudy Casillas asked Cardenas if he was ready to complete the transaction. Cardenas responded that he was. Gutierrez asked Cardenas if he should "go get it." Cardenas responded "yes, go get it" in Spanish. Gutierrez left the apartment for about five minutes. Upon his return Gutierrez covered the windows with a sheet, and asked Cardenas if he should "take it out." Cardenas told him to do so. Thereafter, Gutierrez removed a clear plastic bag from the pocket of the jacket he was wearing and handed it to Cardenas.

After the agents inspected the black tar balls from the bag, one of the officers left the apartment ostensibly to obtain the purchase money. A surveillance arrest team entered the apartment at that point and placed Cardenas and Gutierrez under arrest.

Gutierrez was read his *Miranda* rights. He stated that he wished to cooperate. He told the agents that he retrieved the heroin from his residence in apartment number 12. After again being advised of his *Miranda* rights, Gutierrez consented to a search of his apartment.

Later, at the DEA office, an agent again read Gutierrez his *Miranda* rights. Gutierrez signed a waiver. After DEA agents conducted an interview with Gutierrez, Gutierrez signed a statement admitting that he knew Cardenas was conducting a heroin sale and that he "helped [Cardenas] in the exchange."

Gutierrez filed a motion to suppress the evidence seized from apartment 12 and the incriminating written statement. Gutierrez testified at the suppression hearing. The district court denied the motion to suppress. Gutierrez was found guilty as charged after a trial by jury. This appeal followed.

## II. GUTIERREZ'S FIFTH AMENDMENT CLAIM

Gutierrez contends that his Fifth Amendment privilege against self incrimination was violated because the prosecutor introduced the suppression hearing testimony to prove guilt at trial. During the trial on the issue of guilt, Agent Casillas testified that he saw Gutierrez remove from his jacket pocket a clear plastic bag containing heroin and hand it to Cardenas. At the suppression hearing, Gutierrez similarly testified that he retrieved the bag from his pocket and handed it to Cardenas.

At trial, Gutierrez testified on direct examination that Cardenas pulled the plastic bag out of the jacket pocket. During cross examination, the prosecutor asked Gutierrez if he recalled testifying at the suppression hearing that he had removed the plastic bag from his pocket and handed it to Cardenas.[1]

A: Yes.

---

1. The reporter's transcript of the trial proceedings reflects the following colloquy:

   Q: Do you recall the hearing that took place on November 18th, 1992?

Gutierrez argues that it was error for the district court to allow this line of questioning because it conditioned the exercise of his Fourth Amendment rights upon a waiver of his Fifth Amendment privilege against self incrimination in violation of *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). A trial court abuses its discretion by erroneously interpreting the law. We review the district court's interpretation of the law *de novo. See United States v. Sanchez–Robles*, 927 F.2d 1070, 1077 (9th Cir.1991) (district court's determination that evidence is admissible under the Federal Rules of Evidence is a question of law subject to *de novo* review).

Gutierrez's reliance upon *Simmons* is misplaced. In *Simmons*, the defendant testified at an evidentiary hearing on his motion to suppress a suitcase containing incriminating evidence which was seized during a police search. *Simmons*, 390 U.S. at 389, 88 S.Ct. at 973. The defendant's testimony established that he was the owner of the suitcase. *Id.* The prosecution introduced this testimony at trial in its case in chief on the issue of guilt. *Id.* In reversing the conviction, the Supreme Court held in *Simmons* that a defendant cannot be forced to surrender his Fifth Amendment privilege against self incrimination in return for the opportunity to assert his right to be free from unreasonable search and seizure. *Id.* at 394, 88 S.Ct. at 976. The Court ruled that when a defendant takes the stand to protect his Fourth Amendment rights at a pretrial suppression hearing, his testimony cannot later be used against him to prove guilt. *Id.* The question whether such testimony could be used for impeachment purposes was not before the Court in *Simmons*.

Twelve years later, the Supreme Court acknowledged that *Simmons* had left undecided the propriety of using suppression hearing testimony to impeach a defendant at trial. *United States v. Salvucci*, 448 U.S. 83, 93–94, 100 S.Ct. 2547, 2553–54, 65 L.Ed.2d 619 (1980). Although the Court was not presented with an opportunity to resolve the issue in *Salvucci*, the Court commented that "[a] number of courts considering the question have held that such testimony is admissible as evidence of impeachment." *Id.* at 93 n. 8, 100 S.Ct. at 2554 n. 8. Subsequent to the Court's decision in *Salvucci*, the Eleventh Circuit squarely held that "the use of prior inconsistent statements given at a suppression hearing can be used to impeach a defendant's trial testimony, whether given during direct or cross-examination." *United States v. Quesada–Rosadal*, 685 F.2d 1281, 1283 (11th Cir.1982); *see also United States v. Smith*, 940 F.2d 710, 713 (1st Cir.1991) (suggesting that testimony from a preliminary hearing might be used for purposes of impeachment at trial); *United States v. Charles*, 738 F.2d 686, 698 (5th Cir.1984) (noting that suppression hearing testimony might be used for purposes of impeachment at trial).

■ Contrary ·to Gutierrez's contention, the testimony at issue in this case was not introduced for the purpose of proving his guilt. Instead, the prosecution introduced Gutierrez's suppression hearing testimony in order to impeach his credibility as a witness by means of a prior inconsistent statement. During closing argument, the prosecutor informed the jury that the suppression hearing testimony should be considered solely for its bearing on Gutierrez's credibility:

Now you're going to get an instruction regarding your *assessment of the credibility of witnesses*, and there's different questions that you get to *ask yourself in assessing who is telling the truth* during— who has been telling the truth and who has not been telling the truth during the course of the this [sic] trial. One of the questions is, did the witness have an inter-

Q: Okay. If you could direct your attention to page 31, line 7, this is the transcript of that hearing, and the question was asked if you—if the translator, I suppose, could translate the following:

"Then you retrieved from the pocket a clear, plastic bag. Is that correct, sir?"

"Answer: Yes.["]

"Question: Okay. And then you handed that clear, plastic bag and its contents to Mr. Cardenas. Is that correct?"

"Answer: Yes."

....

Q: Do you recall making those statements, sir?

A: No.

est in the outcome of this case or any bias or prejudice concerning any party or any matter involved in the case. And I submit to you that the defendant certainly does have an interest in the outcome of this case and would certainly be biased. How reasonable was the witness' testimony considered in light of the [sic] all the evidence in this case?

Those are questions that you get to ask in assessing the credibility of each witness. *Was the witness' testimony contradicted by what the witness has said or done at another time* or by the testimony of other witnesses or by other evidence?

. . . .

*. . . [Gutierrez] was also impeached by his prior sworn testimony* when he said, "Oh, I put the hand in the jacket." He did say on his direct examination and on his redirect examination, "I never touched the clear plastic bag." That's what he's trying to tell you. Again, limiting, trying to distance himself—

(emphasis added). The record does not support Gutierrez's contention· that the prosecutor argued that the suppression hearing testimony could be considered as direct, rather than impeaching, evidence in determining whether his guilt had been proved beyond a reasonable doubt. Accordingly, the *Simmons* rule precluding the exploitation by a prosecutor of a defendant's testimony at a suppression hearing to prove guilt was not violated here.

■ Gutierrez contends further that reversal is required in this matter because the district court did not provide the jury with an instruction limiting the use of his suppression testimony to the issue of credibility. Gutierrez states "the record is devoid of any instruction advising the jury of the limited use of [my] previous statements in the suppression hearing." Gutierrez did not request such an instruction, although he was given the opportunity to do so. After the court

concluded the reading of its instructions to the jury, Gutierrez's counsel was asked if she wished to request additional instructions or whether she objected to those the court had given. Counsel declined the invitation.[2] Gutierrez therefore waived this argument. *See* Fed.R.Crim.P. 30 ("No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict."); *United States v. Varela,* 993 F.2d 686, 688 (9th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 232, 126 L.Ed.2d 186 (1993).

■ Finally, Gutierrez asserts that, under *Simmons,* his suppression hearing testimony was "implicitly" given "a type of 'use immunity'" and, as such, was "compelled" testimony which precluded its introduction to impeach him under *New Jersey v. Portash,* 440 U.S. 450, 99 S.Ct. 1292, 59 L.Ed.2d 501 (1979). His reliance upon *Portash* is misplaced. In *Portash,* the Court held that testimony given in response to a grant of legislative immunity is coerced testimony and therefore may not be used either to prove guilt or to impeach. *Id.* at 459, 99 S.Ct. at 1297. *Simmons* did not hold that a defendant's testimony at a suppression hearing was inadmissible because it was compelled pursuant to a grant of immunity. The rule announced in *Simmons,* as discussed above, precludes the use of suppression hearing testimony to establish guilt. *Simmons* is inapplicable because Gutierrez's prior inconsistent testimony was not admitted for that purpose. Moreover, Gutierrez was not forced to testify at his suppression hearing. He did so voluntarily in order to preclude the use of incriminating evidence at his trial. Thus, he did not face "the cruel trilemma of self-accusation, perjury or contempt." *Murphy v. Waterfront Comm'n,* 378 U.S. 52, 55, 84 S.Ct. 1594, 1596, 12 L.Ed.2d 678 (1964). Gutierrez cites no authority to support the proposition that a defendant's decision to take the stand to protect a consti-

---

**2.** The reporter's transcript at trial reflects the following exchange:

[THE COURT]: Now, ladies and gentlemen, that concludes my charge on the law and the counsel here may wish to talk to me about something that perhaps I omitted or inadvertently misstated or they may request something further. And I address the lawyers now, just yes or no. Do you have any requests or exceptions?

[PROSECUTOR]: No, Your Honor.

[GUTIERREZ'S COUNSEL]: No, Your Honor.

tutional right precludes the use of his testimony for purposes of impeachment.

The Supreme Court has instructed us that "[e]very criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury." *Harris v. New York*, 401 U.S. 222, 225, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971). Gutierrez elected to testify in his own defense at his trial. The Fifth Amendment protected him from the use of his suppression hearing testimony in the Government's case in chief to prove his guilt. It did not protect him from impeachment for testifying falsely. The district court did not abuse its discretion by admitting Gutierrez's suppression hearing testimony for the purpose of impeaching his credibility at trial.

AFFIRMED.