Casey **RINGOR**, Plaintiff–Petitioner

v.

**UNITED STATES of America,**
**Defendant–Respondent.**

Civ. No. 95–00245 DAE.
Crim. No. 93–00156 DAE 01.

United States District Court,
D. Hawai'i.

May 26, 1995.

Daniel A. Bent by Michael K. Kawahara, Asst. U.S. Atty., for U.S.

Deanna Spencer, Melissa Day, Asst. Fed. Public Defenders, Alexander Silvert, for Casey Ringor.

*ORDER DENYING PETITION TO VACATE CONVICTION AND SENTENCE PURSUANT TO 28 U.S.C. § 2255*

DAVID ALAN EZRA, District Judge.

The court received Plaintiff's Petition on March 28, 1995. Alexander Silvert, Esq., appeared on the briefs on behalf of Plaintiff; Beverly Wee Samashima, Esq., appeared on the briefs on behalf of Defendant. After reviewing the Petition and the supporting and opposing memoranda, the court DENIES Plaintiff's Petition to Vacate Conviction and Sentence.

### BACKGROUND

Law enforcement officials arrested Plaintiff–Petitioner Casey Ringor ("Ringor") on December 27, 1992, at the Honolulu Airport. At that time, the officials searched Ringor's bag and jacket and seized a cashier's check in the amount of $3,900.[1] On January 26, 1993, the government charged Ringor with the knowing and intentional possession of one kilogram of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. On February 2, 1993, Ringor pleaded guilty to this charge, pursuant to a plea agreement. In February 1993, Ringor received a Notice of Administrative Forfeiture, which informed him that the government intended to forfeit the cashier's check. Ringor did not contest this forfeiture, and in April 1993, the money was officially forfeited. Ringor does not now contest that he had notice of the forfeiture.

This court sentenced Ringor on August 11, 1993 to three years of incarceration plus five years of supervised release. This sentence represents a downward departure granted Ringor as a result of his substantial assistance to the government. Since then, Ringor has been imprisoned at FCI Terminal Island; he is scheduled to be released in May 1995, to begin serving five years of supervised release.

Ringor argues that the uncontested administrative forfeiture of his $3,900 cashier's check constitutes punishment under the Double Jeopardy Clause of the Fifth Amendment. The Drug Enforcement Agency completed the forfeiture of the check before Ringor was sentenced. Ringor argues that his sentence of incarceration and conviction constitute multiple punishments for the same offense and must be vacated to avoid violating the Double Jeopardy Clause.

---

1. Ringor states that the money was from his annuity account and/or from the sale of his truck. Ringor also contends that the money was left over from funds he used to purchase the cocaine for which he was arrested, and was not originally the proceeds of any drug transactions.

*STANDARD OF REVIEW*

■ This court's review of Petitioner's motion is provided for in 28 U.S.C. § 2255:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Because the scope of collateral attack of a sentence under § 2255 is limited, it does not encompass all claimed errors in conviction and sentencing. *United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979).

*DISCUSSION*

I.

■ In *United States v. $405,089.23*, 33 F.3d 1210 (9th Cir.1994), a panel of the Ninth Circuit Court of Appeals held that 21 U.S.C. § 881(a)(6), the narcotics proceeds forfeiture statute, serves a punitive and not solely remedial purpose. As a result, the court reasoned, the government violated the Double Jeopardy Clause of the Fifth Amendment by obtaining convictions in a criminal case and then continuing to pursue a civil forfeiture action based upon the same criminal conduct. After *$405,089.23*, the government must seek forfeiture under 21 U.S.C. § 881(a)(6) in the same proceeding, i.e., the same indictment, as the criminal prosecution, or choose to forego that prosecution. 33 F.3d at 1222.

Because this opinion casts the government's use of civil forfeiture in doubt and inspires Defendant's motion, the court will pause to examine it closely. In *$405,089.23*, the government brought a criminal prosecution and civil forfeiture proceedings at roughly the same time. In the indictment, the government accused the defendants of conducting a large-scale methamphetamine manufacturing operation and of using a series of front corporations in order to create the appearance that they were engaged in legitimate mining operations. 33 F.3d at 1214. In addition to the $405,089.23, the forfeiture complaint in the judicial forfeiture proceeding listed other bank accounts, cash, silver bars, a helicopter, a shrimp boat, and eleven cars. *Id.* The government sought forfeiture on two grounds: (1) as proceeds of illegal narcotics transactions under 21 U.S.C. § 881(a)(6), and (2) as property "involved in" money laundering violations under 18 U.S.C. § 981(a)(1)(A). Unlike Ringor here, defendants *filed claims* to the property, and, pursuant to a stipulation, the district court stayed the proceedings pending the outcome of the parallel criminal case.

Eight months after a jury convicted the defendants, the government sought summary judgment in the forfeiture action. The district court granted the motion, finding that the convictions for methamphetamine manufacturing and money laundering established probable cause under both the government's narcotics proceeds and money laundering theories.

The Ninth Circuit began its discussion with the "most basic element of the Double Jeopardy Clause … the protection it affords against successive prosecutions…." *Id.* at 1215. Having discussed this protection, the court concluded that the two proceedings prevented the defendants from " 'being able, once and for all, to conclude [their] confrontation with society' at the time of the jury's verdict." *Id.* at 1216 (citing *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (opinion of Harlan, J.)).

Next the court addressed two conditions precedent to the application of the double jeopardy bar: (1) whether defendants faced two proceedings; and (2) whether the civil proceeding resulted in "punishment." *Id.* In deciding that the civil forfeiture proceeding stood apart from the criminal prosecution as a separate proceeding, the court criticized two other circuit court decisions, one from the Eleventh Circuit and one from the Second Circuit, both holding that in cases like *$405,089.23*, parallel civil forfeiture proceedings do not constitute separate "proceedings." *Id.* (citing *United States v. One Single Family Residence*, 13 F.3d 1493, 1499

(11th Cir.1994); *United States v. Millan*, 2 F.3d 17, 20 (2d Cir.1993)). The court refused to hold as these courts did that a forfeiture action and criminal prosecution making up a "single, coordinated prosecution" constitute a single proceeding, reasoning that such a holding would encourage abuses of government power. Specifically, the court described the government strategy of delaying civil forfeiture until after the criminal case so that the more lenient probable cause standard would serve to impose punishment if the jury failed to do so applying reasonable doubt. *Id.* at 1217.

The Supreme Court's recent decision in *Department of Revenue of Montana v. Kurth Ranch*, — U.S. —, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994) leaves little doubt that an administrative forfeiture proceeding may constitute a separate proceeding for the purpose of double jeopardy. In *Kurth Ranch*, the Court held that a tax imposed upon the growing of marijuana constituted "punishment" under the Double Jeopardy Clause. — U.S. at —, 114 S.Ct. at 1943. The Kurths had originally contested the tax in administrative proceedings, although in their particular case the tax would have been imposed in bankruptcy proceedings, had the bankruptcy judge not held that the tax violated double jeopardy. *Id.* Nowhere in the Court's opinion does it suggest that the potentially administrative nature of the imposition of the tax made a difference in the double jeopardy analysis. Under *$405,089.23* and *Kurth Ranch*, this court concludes that the administrative forfeiture proceedings in this case did constitute "separate proceedings." [2]

Turning to the issue of punishment, the Ninth Circuit in *$405,089.23* applied *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), and *Austin v. United States*, — U.S. —, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), where the Supreme Court exploded the civil/criminal distinction in favor of an inquiry into whether the stat-

ute in question serves "solely a remedial [and not punitive] purpose." *Id.* at 1219 (citing *Austin*, — U.S. at —, 113 S.Ct. at 2812; *Halper*, 490 U.S. at 448, 109 S.Ct. at 1901–02). In applying *Halper* and *Austin*, the court noted a pivotal distinction. In *Austin*, the Court held that civil forfeiture could constitute "punishment" under the Excessive Fines Clause of the Eight Amendment. — U.S. at —, 113 S.Ct. at 2812. In *Halper*, the Court held that a civil penalty provision imposing a penalty grossly disproportionate to the damages caused constituted a second punishment in violation of the double jeopardy clause. 490 U.S. at 449–50, 109 S.Ct. at 1902–03. The Ninth Circuit reasoned that *Austin*'s application of the *Halper* test signals that "punishment" under *Halper* constitutes punishment under both clauses. *Id.*

This court must note its disagreement with this crucial step in the Ninth Circuit's analysis. Where *Halper* expressly conducted a proportionality calculation of the fine *before* finding it constituted a punishment under the Double Jeopardy Clause, and *Austin* looked to the scope of the statute in order to determine whether the fine constituted punishment *then subject* to the proportionality calculation of the Excessive Fines Clause, *$405,089.23* combined the two decisions to excise *Halper*'s inquiry into proportionality *prior* to lowering the double jeopardy boom. *$405,089.23* effectively erases the following language from *Halper*:

Where a defendant previously has sustained a criminal penalty and the civil penalty sought in a subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as "punishment" in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment. We must leave to the trial court the discretion to determine on the basis of such an ac-

---

**2.** The court uses care to sharpen its conclusion on this point, which is merely that the administrative nature of the proceeding or its proximity in time with the criminal prosecution does not preclude the application of the double jeopardy bar. However, as discussed below, specific aspects of the administrative proceedings in the context of Defendant's election not to contest those proceedings greatly alter the analysis as to the existence of a former jeopardy or punishment barring the subsequent criminal prosecution.

counting the size of the civil sanction the government may receive without crossing the line between remedy and punishment. 490 U.S. at 449–50, 109 S.Ct. at 1902 (citations omitted). In combining the two tests to excise this inquiry, the court invoked the rigid, binary effect of the double jeopardy bar without the rationalizing proportionality test inherent in the inquiry into its application in the civil context. In fact, it is the disproportionate punishments meted out by civil forfeiture in certain infamous circumstances that have animated the debate over civil forfeiture. *See, e.g.,* William Carpenter, "Reforming the Civil Drug Forfeiture Statutes: Analysis and Recommendations," 67 Temple L.Rev. 1087, 1088–96 (1994) (describing debate over civil forfeiture). In so combining *Austin* and *Halper,* the Ninth Circuit has left *Halper* far behind.[3]

Indeed, the Supreme Court in *Kurth Ranch* carefully distinguished its analysis of the Montana Drug Tax statute from the *Halper* proportionality approach. —— U.S. at ——, 114 S.Ct. at 1948. There, the *Halper* majority turned a dissent argument back upon itself, agreeing with Chief Justice Rehnquist that "the reasoning quite properly employed in *Halper* to decide whether the exaction was remedial or punitive simply does not work in the case of a tax statute." —— U.S. at ——, 114 S.Ct. at 1950 (Rehnquist, J., dissenting) ("Tax statutes need not be based on any benefit accorded to the taxpayer or on any damage or cost incurred by the Government as a result of the taxpayer's activities.") (citation omitted). Having agreed with Chief Justice Rehnquist on this point, the majority then determined that the tax constituted punishment without going through the *Halper* analysis, concluding that "[s]ubjecting Montana's drug tax to *Halper*'s test for civil penalties is therefore inappropriate." —— U.S. at ——, 114 S.Ct. at 1948. Even if it did apply *Halper,* contin-

ued that Court, Montana had made no showing that its assessment "even remotely approximate[d] the cost of investigating, apprehending, and prosecuting the Kurths, or that it roughly relates to any actual damages that they caused the state." *Id.* Using this reasoning, the *Kurth* Court left intact *Halper*'s holding that "a civil penalty may be imposed as a remedy for actual costs to the State that are attributable to the defendant's conduct." *Id.* (citing *Halper,* 490 U.S. at 452, 109 S.Ct. at 1903–04). By so quickly equating *Halper* and *Austin,* the Ninth Circuit in *$405,089.23* created a hybrid test for finding "punishment" that greatly expands the application of the double jeopardy bar. Under the reasoning in *$405,089.23, any* forfeiture under 21 U.S.C. § 881(a)(6) constitutes punishment, no matter how small the value of the property and no matter how large the cost to the government.

However, the court in *$405,089.23* did not completely ignore the difference between the Excessive Fines Clause and the Double Jeopardy Clause. After holding that "the answer to the question whether a particular forfeiture constitutes punishment will always be the same for purposes of the Double Jeopardy Clause and the Eighth Amendment," the court stated:

[w]hether a violation of either clause exists involves factors that are different with respect to each clause. Thus, even though we may conclude that a particular forfeiture may involve "punishment," we could still conclude, depending on the facts in the case before use, that both clauses were violated, neither clause was violated, or a violation of one but not the other occurred.

*Id.* at 1219 n. 8. While this statement might have signalled a retreat from its *Halper*-plus-*Austin* analysis, the court then applied *Austin* in determining that 21 U.S.C. § 881(a)(6) constitutes punishment, using *Austin*'s "categorical approach" and focusing not on the

---

**3.** Recently, Judge Rymer referenced this problem in her reluctant concurrence in the application of *$405,089.23:*

> The result I feel obliged to reach effectively transforms the "rare case" where *Halper* contemplates that double jeopardy will apply to civil proceedings, 490 U.S. at 449 [109 S.Ct. at 1902], into a commonplace occurrence, and

may have other consequences for parallel civil and criminal proceedings which I find it difficult to believe that either the Congress or the Court had in mind. Nevertheless, I must concur.

*United States v. One 1978 Piper Cherokee Aircraft,* 37 F.3d 489, 496 (9th Cir.1994) (Rymer, J., concurring).

facts of the particular *case* but on the nature of the statute.[4] 33 F.3d at 1220. After analyzing the statute, the court concluded that it did indeed have a punitive purpose and therefore that by its application the government sought "punishment" in a "separate proceeding," which is barred by the Double Jeopardy Clause. Acknowledging the impact of its decision on civil forfeiture, the court concluded its opinion by stating that the government would have to rely to a "much greater extent upon civil forfeiture" where it sought forfeiture and other forms of criminal punishment. *Id.* at 1222 (citation omitted).

Given the court's analysis of the statute as punishment in *$405,089.23*, the court's earlier statement that the facts of a particular case may show no violation of the Double Jeopardy Clause carries particular import here, where a defendant has elected not to contest an administrative forfeiture. *See* 33 F.3d at 1219 n. 8. Because this court disagrees with, but is here bound by, the expansion of *Halper* in *$405,089.23*, it approaches with particular skepticism the further extension of "double jeopardy" protection where a defendant does not even contest an administrative forfeiture. In this court's view, a defendant's failure to contest an administrative forfeiture constitutes the kind of variable fact referenced in the *$405,089.23* footnote, decisive of whether the forfeiture violated the Double Jeopardy Clause.

## II.

Because Ringor did not contest the administrative forfeiture and does not now contest notice, this case presents the exact issue recently decided by this court in *United States v. Nakamoto,* 876 F.Supp. 235 (D.Hawaii 1995). In *Nakamoto,* this court addressed many of the same arguments Ringor makes here. The court acknowledged that: (1) civil proceedings may constitute punishment under the Double Jeopardy Clause; (2) current Ninth Circuit law holds that civil forfeiture under 21 U.S.C. § 881(a)(6) constitutes punishment: and (3) current Ninth Circuit law holds that a civil forfeiture proceed-

ing is a separate proceeding, triggering double jeopardy. *Id.* 876 F.Supp. at 236 (citing *United States v. $405,089.23,* 33 F.3d 1210 (9th Cir.1994)); *see also United States v. $292,888.04 in U.S. Currency,* 54 F.3d 564, 566 (9th Cir.1995) (quoting *United States v. $405,089.23,* 33 F.3d at 1218)).

However, this court's holding took those factors into account and rested solely upon Nakamoto's failure to contest the administrative forfeiture. This court held that:

> Because the Defendant chose to forego his opportunity to contest the forfeiture, he was not a party to the forfeiture proceeding and cannot claim an interest in the property. Without an interest in the property, he cannot be said to have been subjected to jeopardy or punished in any way by the administrative forfeiture.

876 F.Supp. at 239. The court based its reasoning in part on *United States v. Torres,* 28 F.3d 1463 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994), where the Seventh Circuit held that an uncontested administrative forfeiture presents no double jeopardy bar to subsequent criminal proceedings. In *Torres,* the court stated: "There was no trial; the $60,000 was forfeited without opposition, and jeopardy did not attach. You can't have double jeopardy without a former jeopardy." *Id.* at 1465 (citation omitted). In addition, the court stated that Torres' failure to contest the forfeiture left no reason to believe that he even had an interest in the property seized. *Id.* This court agreed in *Nakamoto,* and it agrees here.

Ringor attempts to cast doubt upon this court's reliance on *Torres* by distinguishing the link between Torres and the property forfeited there with the arguably stronger link between Ringor and the property forfeited here. He points to certain language in *Torres* as support for his contention that "the *Torres* Court well understood that its decision was fact-specific." Ringor's Response Memorandum, at 2. Ringor cites to this

---

4. Making clear the import of this "categorical approach," the court "generously" construed the government's argument that the actual property forfeited consisted entirely of illegal proceeds as a contention that the statute itself was limited to the forfeiture of illegal proceeds. 33 F.3d at 1220.

sentence from *Torres:* "This case shows, however, that parallel administrative and criminal action do not *necessarily* violate the double jeopardy clause." 28 F.3d at 1465 (emphasis in original). Ringor points to the word "necessarily" as an indicator of narrowness of the *Torres* holding.

However, in the context of the opinion, the word "necessarily" only serves to further highlight the unique nature of the situation addressed by both the *Torres* court and this court in *Nakamoto.* The sentence follows a description of the law of double jeopardy as it had recently evolved through the *Austin* and *Kurth Ranch* decisions, concluding that two trials, one administrative/civil and one criminal, which both imposed punishment, would violate double jeopardy "even if close in time." *Id.* This being the general rule, the *Torres* court uses "not *necessarily*" to distinguish the scenario where the criminal defendant does not contest the administrative forfeiture. *Id.* It in no way implies that its holding is in any way limited to situations where the connection between the defendant and the property forfeited was particularly attenuated.

In fact, the circumstances of *Torres* did not present such an attenuated connection. At the beginning of the opinion, the court states:

> Renato Torres and Carlos Olivares produced $60,000 to pay for three kilograms of cocaine. It was a trap. the "sellers" were federal agents; Torres and Olivares lost the money and their liberty.

*Id.* at 1464. While the court notes that others may have had a claim to the property, it does not imply that its holding is limited to situations where the ownership of property is in doubt. *Id.* at 1465–66. To the contrary, the court premises its reason to believe that Torres had no interest solely upon his decision to forego making a claim in the forfeiture proceeding. *Id.* at 1465. Because he made no claim, Torres was not at risk, and no jeopardy attached. *Id.*

■ Ringor argues that the government's paperwork, the Presentence Investigation Report, and Ringor's own statement to the government removed any doubt that Ringor solely owned the property here. However, as this court reasoned in *Nakamoto,* the strength or weakness of the connection to the property cannot form the basis for the double jeopardy determination. The DEA forfeited Ringor's property under 21 U.S.C. § 881. The procedural provisions of the customs laws govern these administrative forfeitures. 21 U.S.C. § 811(d); 19 U.S.C. §§ 1602–1621. Under the customs laws, administrative forfeiture may proceed if the property is worth less than $500,000. 29 U.S.C. §§ 1607, 1610. Where property falls within the categories specified by 19 U.S.C. § 1607(a), the seizing agency may declare the property forfeited if: (1) it gave proper notice, and (2) no person files a claim to the property within twenty (20) days. 19 U.S.C. § 1608. Upon the filing of a claim and the filing or waiver of a cost bond, 19 U.S.C. § 1608, the matter is referred to the appropriate United States Attorney's Office for initiation of judicial forfeiture. Therefore, under this regime, a declaration of administrative forfeiture may only be entered in uncontested cases. Ringor did not contest the forfeiture.

■ The customs laws also permit a claimant to petition the Department of Justice for remission of forfeiture. 19 U.S.C. § 1618. This remedy allows the government and claimant to resolve the dispute informally, rather than in a judicial proceeding. *United States v. Von Neumann,* 474 U.S. 242, 245–46, 106 S.Ct. 610, 612–13, 88 L.Ed.2d 587 (1986). Generally, once the government has made an administrative determination on the petition, courts have no power to review the merits of that decision. *United States v. Kravitz,* 738 F.2d 102, 105 (3d Cir.1984); *Schrob v. Catterson,* 948 F.2d 1402, 1412 n. 9 (3d Cir.1991). Ringor did not file a petition for remission.

■ A defendant, in failing to contest, makes a voluntary choice. One obvious consequence of that voluntary choice is that the property in question will be forfeited without a determination of the defendants' guilt or innocence. Courts have well established that a defendant may waive his personal constitutional right to double jeopardy protection. *United States v. Lorenzo,* 995 F.2d 1448, 1457 (9th Cir.1993) (citing *United States v.*

*Broce,* 488 U.S. 563, 568, 109 S.Ct. 757, 761–62, 102 L.Ed.2d 927 (1989); *Ricketts v. Adamson,* 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987)). Beyond waiver, however, the Supreme Court has articulated a principle for the double jeopardy context in order to avoid the gamesmanship that can occur where a defendant's voluntary choice avoids the determination of guilt.

In *United States v. Scott,* 437 U.S. 82, 99–100, 98 S.Ct. 2187, 2198, 57 L.Ed.2d 65 (1978), the defendant successfully moved for a dismissal of the indictment due to delay. The Supreme Court held that where the defendant himself chooses to avoid a final determination of guilt or innocence, the Double Jeopardy Clause is not offended by a second prosecution. *Id.* The Court based its reasoning not on the concept of waiver, but on the idea that "the Double Jeopardy Clause, which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice." *Id.*

Similarly, in *Ricketts v. Adamson,* 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987), a defendant who originally pleaded guilty to second-degree murder and agreed, as part of the plea bargain, to testify at a related trial, subsequently refused to testify. The Supreme Court held the Double Jeopardy Clause was not offended when the defendant was tried on a higher charge. 483 U.S. at 8–11, 107 S.Ct. at 2684–86. In reaching this result, the Court relied on *Scott,* reasoning that the defendant in *Ricketts* "could submit to the State's request that he testify at the retrial, and in so doing risk that he would be providing testimony that pursuant to the agreement he had no obligation to provide,

or he could stand on his interpretation of the agreement, knowing that if he were wrong, his breach of the agreement would restore the parties to their original positions and he could be prosecuted for first degree murder." *Ricketts,* 483 U.S. at 11, 107 S.Ct. at 2686. The Double Jeopardy Clause did not relieve defendant from the consequences of that choice.

In *Taylor v. Kincheloe,* 920 F.2d 599 (9th Cir.1990), the Ninth Circuit applied *Ricketts* and *Scott* to a defendant who "chose of his own accord to challenge an aspect of the proceedings against him, and he did so on grounds wholly unrelated to his guilt or innocence." 920 F.2d at 603. The court quoted at length from a statement by Judge Kaufman that "capture[d] the policy concerns at work here." *Id.* n. 6.[5] *See also United States v. Vaughan,* 715 F.2d 1373, 1376 (9th Cir.1983); *United States v. Kemmish,* 869 F.Supp. 803, 805 (S.D.Cal.1994).

While the setting here differs somewhat from that addressed in *Scott* and its progeny, the policy concerns are the same. *Halper* and *Austin* washed away the civil/criminal distinction in the context of punishment. They have not yet, however, resulted in the provision in civil proceedings of due process protection comparable to that provided in criminal proceedings. *See, e.g., Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974) (officials may seize property without hearing); *United States v. One 1971 BMW 4-Door Sedan,* 652 F.2d 817, 820–21 (9th Cir. 1981) (civil due process in forfeiture cases requires little more than forfeiture proceedings be commenced without unreasonable de-

---

**5.** In the case before Judge Kaufman:

the defendant had argued on a due process theory of "prosecutorial vindictiveness" that the prosecutor should not be able to revive a higher charge which earlier had been dismissed pursuant to a plea arrangement defendant himself had vacated. Judge Kaufman remarked: For us to hold that one in [defendant's] position may not be tried and sentenced upon the charge originally brought would encourage gamesmanship of a most offensive nature. Defendants would be rewarded for prevailing upon the prosecutor to accept a reduced charge and to recommend a lighter punishment in return for a guilty plea, when

the defendant intended at the time he entered that plea to attack it at some future date.... This is nothing more than a "heads-I-win-tails-you-lose" gamble. To frustrate this strategy, prosecutors would be restrained from entering plea bargains, thereby adding further to the staggering burdens of our criminal courts, and judges would become more rigid in exercising their discretion in favor of permitting withdrawal of a guilty plea. This would hardly enhance the administration of criminal justice. *Id.* (citing *United States ex rel. Williams v. McMann,* 436 F.2d 103, 106–07 (2nd Cir.1970), *cert. denied,* 402 U.S. 914, 91 S.Ct. 1396, 28 L.Ed.2d 656 (1971)).

lay). "[A]lthough civil and criminal forfeiture may have the same practical effects, they have distinct procedural guarantees and burdens of proof...." *United States v. Michelle's Lounge,* 39 F.3d 684, 696 (7th Cir. 1994). In civil proceedings, default judgments may still be entered, and the government may forfeit property based merely on probable cause to believe it has been involved in a crime. *See United States v. One 56–Foot Yacht,* 702 F.2d 1276 (9th Cir.1983) (it is well settled that the government is entitled to a judgment of forfeiture upon an unrebutted showing of probable cause); *United States v. Amiel,* 995 F.2d 367 (2nd Cir.1993) (where default judgment entered and defendants lost appeal, "then it would appear that defendants have no legitimate claim to the seized properties, which would vitiate any claim of "punishment" based on the civil forfeiture.") (dicta).

Where a civil proceeding ends in a criminal punishment, that proceeding lies through a looking glass. While the punishment may be "criminal" for double jeopardy (or Eighth Amendment) purposes, the proceeding itself is not. The extension of double jeopardy protection to civil "punishments" has not yet reached backward to compel criminal process. For example, in the criminal context, the government could clearly not send a "Notice of Intent to Sentence You to 20 Years" to a defendant and then incarcerate him after his failure to respond. The failure to respond would not constitute a guilty plea. In the civil context, however, the government may initiate forfeiture proceedings and enter a default judgment against property after a defendant fails to respond. Defendants who voluntarily absent themselves from civil proceedings may lose their right to contest those proceedings far easier than persons who enter pleas of guilty.[6]

In addressing the voluntary choice of a potential claimant to absent himself from administrative forfeiture proceedings, the court is satisfied that the notice sent by the agency sufficiently informs the recipient of the consequences of his choice. *See, e.g.,* Notice, attached as Exhibit "1" to the Government's Memorandum in Opposition. It spells out the time limits and procedures to be followed quite clearly. A claimant failing to respond should know that the property will be lost. While such a claimant might later seek remission of the property as a matter of grace, or might contest notice and ask a court to reopen forfeiture proceedings, that claimant should certainly not be permitted, under the policy of *Scott* and *Ricketts,* to play a "heads-I-win-tails-you-lose" game.

While the clause protects against double jeopardy and double punishment, nowhere does it guarantee the right to reopen or contest civil proceedings after default has entered, or to use those proceedings in the manner urged by Ringor. Ringor would have this court apply a post hoc, case-by-case analysis in order to determine whether each defendant who chooses not to contest the forfeiture of his property actually had an interest. In fact, the determination of the nature of that interest is a primary purpose of the opportunity to contest a forfeiture. Were the court to go outside the forfeiture proceeding to search for *unasserted* property interests and "punishment in fact," the court could find, as in the hypothetical presented in *Nakamoto,* that the forfeiture statutes are currently punishing a host of persons.[7]

---

**6.** The court acknowledges that part of this distinction rests on the "guilty property" fiction of *in rem* proceedings. In *Austin,* the Supreme Court held that this fiction does not remove the punitive nature of forfeiture. —— U.S. at ——, 113 S.Ct. at 2810. However, the court did *not* go so far as to hold that the proceedings themselves were therefore "criminal" proceedings, justifying the full panoply of criminal process. Neither did the court hold that default judgments could not be entered in civil forfeitures.

**7.** In *Nakamoto,* this court gave an example of the sweeping nature of the punitive effect when unfettered by the requirement that a person with an interest in property assert that interest:

Assume that the DEA initiates a successful investigation of a drug production and trafficking operation. At several locations, the DEA seizes a vast array of items, including money and drug paraphernalia. Assume also that the DEA also arrests twenty (20) defendants at one key location, thirty (30) sellers on the street, and the one leader who runs the entire operation. Fifty others who were also involved escape arrest. The DEA initiates administrative forfeiture proceedings against the property seized and complies with the notice provisions

Ringor offers no bright line for this court in making its post-forfeiture determination of punishment based on an unasserted property interest. In fact, leaving aside a scenario where everyone in the nation is punished currently and constantly by administrative forfeitures, this court can only see three possible lines for determining when an uncontested forfeiture constitutes punishment barring further jeopardy. First, the court could hold that all those on whose person property is found and later forfeited are punished within the meaning of double jeopardy. This approach would be both over and under inclusive, leaving out many who may have an interest and including many who are mere conduits for property. Second, this court could find that anyone entitled to specific notice by the agency is punished, but this would place dangerous pressure upon the agency to avoid notice where possible and, more importantly, upon the interpretation and application of the notice requirements themselves, which were written to ensure notice to interested parties and not to serve as the arbiter of when punishment occurs. Finally, this court could hold that, assuming proper notice, the correct line at which to draw the jeopardy lies where a defendant with an interest in the property asserts that interest, seeking its adjudication. This is the correct option. Any other creates grey clouds of floating, doubtful punishment. This court will not here adjudicate an interest in property where a defendant has not asserted that interest in a forfeiture proceeding.

For these reasons, the court holds that the uncontested administrative forfeiture did not punish Ringor or place him in jeopardy in the sense necessary to trigger the protection of the Double Jeopardy Clause.

### III.

■ Ringor further argues that forcing him to contest the administrative forfeiture places him in two separate dilemmas involving double jeopardy and self-incrimination.

First, Ringor focuses on 19 U.S.C. § 1608, the administrative forfeiture provision which requires the posting of a bond in order to contest a forfeiture, waivable only where a financial affidavit is submitted by the defendant. Ringor argues that disclosures necessary for the financial affidavit could have incriminated him, forcing a choice between contesting the forfeiture and self-incrimination. Second, Ringor contends that a defendant choosing to submit an interest in the property may thereby incriminate himself at the criminal trial.

The theoretical nature of these arguments forecloses their application here. While the Fifth Amendment prevents the state from compelling the accused to make a testimonial communication that is incriminating, the accused claiming the privilege must be faced with substantial hazards of self-incrimination that are "real and appreciable" and not merely "imaginary and unsubstantial." *Seattle Times Co. v. United States Dist. Court*, 845 F.2d 1513, 1518–19 (9th Cir.1988) (quoting *United States v. Neff*, 615 F.2d 1235, 1239 (9th Cir.1980)) (further citation omitted). In *Seattle Times*, the Ninth Circuit agreed with the Tenth Circuit that "[t]he time for protection will come when, if ever, the government attempts to use the information against the defendant at trial," *Id.* at 1519 (citing *United States v. Peister*, 631 F.2d 658, 662 (10th Cir.1980)). In *Seattle Times*, the court held that a district court's assumption that certain affidavits would incriminate a defendant was premature and that the issue need not be reached until the government attempted to use the information against the defendant. *Id.*

Where the situation in *Seattle Times* was speculative, the situation here is downright hypothetical. Ringor never raised a Fifth Amendment objection in connection with filing a financial affidavit. He never gave financial information for a cost bond and never asserted in a forfeiture proceeding any interest in the property or any inability to assert

---

mandated by the statute. No one claims any of the property. Against whom does double jeopardy attach? Conceivably, the statute's punitive purpose applies to all fifty-one (51) of the arrestees, and arguably the other fifty (50) not arrested. Still, the only plausible answer

is that double jeopardy can attach only when an individual comes forward, lays claim to the property, and converts the uncontested administrative forfeiture into a contested judicial one.
876 F.Supp. at 238 n. 6.

such an interest based upon self-incrimination. Moreover, even if he had asserted his privilege, more facts would be necessary to constitute a defense. *See United States v. Certain Real Property 566 Hendrickson Blvd.* 986 F.2d 990, 996 (6th Cir.1993) (citing *United States v. $250,000 in United States Currency,* 808 F.2d 895, 900–01 (1st Cir.1987) (blanket assertion of the Fifth Amendment is no defense to forfeiture proceedings)). Where a defendant makes no showing or explanation of how the introduction of evidence would have prejudiced him, he cannot rest on the Fifth Amendment to invalidate forfeiture proceedings. *Id.* Absent action at the time, this court cannot evaluate whether the information would have been incriminating, or, indeed, compelled.

Ringor cannot now look back on his failure to raise such objections and his failure to contest the proceedings and then ascribe a post hoc motive of avoiding self-incrimination as a means to escape the effect of his prior conduct. Like the privilege against double jeopardy, the Fifth Amendment privilege against self-incrimination is personal and may be waived. *Id.* (citing *United States v. Certain Real Property Commonly Known as 6250 Ledge Road,* 943 F.2d 721, 729 n. 9 (7th Cir.1991)) (where defendant did not seek relief from district court, court had no obligation to accommodate an unasserted privilege).

Even assuming that the information was incriminating and compelled, the remedy for the situation would *never* be to invalidate the forfeiture or bar a subsequent criminal prosecution or punishment. In forfeiture proceedings, courts inquire into the specificity of claims of Fifth Amendment privilege, and then, in certain circumstances, stay the forfeiture proceedings until after the criminal proceedings in order to avoid the problem of self-incrimination. *See, e.g., United States v. Lot 5, Fox Grove* 23 F.3d 359 (11th Cir.1994), *cert. denied,* ⸺ U.S. ⸺, 115 S.Ct. 722, 130 L.Ed.2d 627 (1995) (finding no error in refusal to stay proceedings where defendant did not show how she was prejudiced). An as-

sertion of the privilege simply does not substitute for filing a claim in a forfeiture proceeding. *Baker v. United States,* 722 F.2d 517, 519 (9th Cir.1983) (rejecting contention that Fifth Amendment allowed claimant to invoke the privilege rather than assert a property interest);[8] *United States v. Certain Real Property 566 Hendrickson Blvd.* 986 F.2d at 996 (citing *United States v. $250,000 in United States Currency,* 808 F.2d at 900–01; *United States v. Certain Real Property Commonly Known as 6250 Ledge Road,* 943 F.2d at 729). Because assertion of the privilege will not substitute for a claim, it cannot suffice to place Ringor in jeopardy or under any punishment.

Outside the forfeiture context, the accommodation of the Fifth Amendment privilege is also limited to the facts of the case and the extent of the privilege. The Supreme Court has held that, for purposes of the Fifth Amendment, when an accused is required to provide testimony in order to exercise a constitutional right, the testimony has been "compelled." *See Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *see also United States v. Kahan,* 415 U.S. 239, 94 S.Ct. 1179, 39 L.Ed.2d 297 (1974) (per curiam). In *Simmons,* the Court held that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony is covered by a form of "use immunity," and may not be used against him at trial on the issue of guilt. *Simmons,* 390 U.S. at 394, 88 S.Ct. at 976; *United States v. Salvucci,* 448 U.S. 83, 93–94, 100 S.Ct. 2547, 2553–54, 65 L.Ed.2d 619 (1980). The suppression hearing followed by the criminal trial in *Simmons* presents a fitting analogy to this case, where the forfeiture preceded the prosecution. Courts remedy the *Simmons* dilemma by excluding the incriminating evidence, not by summarily granting the defendant's motion to suppress. Indeed, even this protection for compelled, incriminating evidence has limits: it will not save a defendant who testifies to the contrary at trial. *See United States v. Beltran–Gutierrez,* 19 F.3d 1287 (9th Cir. 1994) (Fifth Amendment protected defendant

---

8. The court acknowledges that much has changed in the area of civil forfeiture since *Baker v. United States,* but it has not changed so much

that the mere assertion of the privilege carries a claimant's burden of proof in a forfeiture proceeding.

from the use of his suppression hearing testimony in the government's case to prove his guilt but did not protect him from impeachment for testifying falsely).

Similarly, the remedy for incriminating financial information compelled in an affidavit would fall far short of what Ringor requests: summarily deeming a financial interest asserted and "further punishment" barred. In *United States v. Kahan*, the Supreme Court considered but did not decide the issue of whether "use immunity" similar to that granted in *Simmons* extends to statements a defendant makes with respect to his financial affairs in order to obtain court-appointed counsel. 415 U.S. at 243, 94 S.Ct. at 1181. Justice Marshall noted in dissent that if the court does decide the question, a choice will be required between (1) allowing an indigent defendant to lie in order to obtain counsel and (2) granting "use immunity." *Kahan*, 415 U.S. at 247, 94 S.Ct. at 1183 (Marshall, J., dissenting). In *United States v. Pavelko*, 992 F.2d 32 (3rd Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 272, 126 L.Ed.2d 223 (1993), the Third Circuit chose the second option, finding error where a magistrate judge allowed the government to use information from such a financial affidavit against a defendant.

While a contrary result in *Simmons* would have forced the defendant to choose between self-incrimination and his right to be free from unreasonable searches, and another result in *Pavelko* would have forced a choice between self-incrimination and the right to counsel, here this court has concluded that the failure to assert the privilege or a property interest obviates the application of double jeopardy principles. That a defendant who contests the forfeiture may claim the protection of the double jeopardy bar as enunciated by *$405,089.23* lies implicit in this conclusion. However, as discussed above, where the mere assertion of the privilege without explanation will not suffice to trigger protection, the post hoc, hypothetical assertion of the privilege or a property interest will certainly fare no better.

The refusal to turn the Fifth Amendment shield into a sword underlies these decisions and animates this court's holding. The government should be prevented from burdening the privilege against self-incrimination by making the tactical decision to testify more "costly." *See Griffin v. California*, 380 U.S. 609, 614, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965). However, the Supreme Court and the Ninth Circuit have acknowledged that the protection against burdening the Fifth Amendment has limits. In *United States v. Rylander*, 460 U.S. 752, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983), the Supreme Court stated that allowing the assertion of the privilege to satisfy a party's burden of production:

> would convert the privilege from the shield against compulsory self-incrimination which it was intended to be into a sword whereby a claimant asserting the privilege would be freed from adducing proof in support of a burden which would otherwise have been his. None of our cases support this view.

460 U.S. at 758, 103 S.Ct. at 1553; *see also United States v. Baker*, 850 F.2d 1365, 1370 (9th Cir.1988).

Here, Ringor attempts to use the privilege against self-incrimination as the ultimate sword. After never asserting the privilege, he argues now that he failed to file a bond and contest the administrative forfeiture because these acts would incriminate him. As a remedy, he asks this court to acknowledge that he did indeed assert a property interest in the forfeiture proceeding, and therefore was punished, and, therefore, should be excused from his term of imprisonment and supervised release. Because the self-incrimination dilemmas never materialized and because the remedy sought is well beyond those provided for such dilemmas, the court finds Ringor's argument concerning self-incrimination without merit.

### CONCLUSION

For the reasons stated above, the court DENIES Ringor's Petition.

IT IS SO ORDERED.