**UNITED STATES of America, Plaintiff,**

v.

**Don Takamori NAKAMOTO, Defendant.**

**Cr. No. 94–01188 DAE.**

United States District Court,
D. Hawai'i.

Feb. 14, 1995.

Michael K. Kawahara, Asst. U.S. Atty., U.S. Attys. Office, Beverly Sameshima, Asst. U.S. Atty., Honolulu, HI, for plaintiff.

Ignacio R. Garcia, Benjamin R.C. Ignacio, Garcia & Garcia, Honolulu, HI, for defendant.

## ORDER DENYING DEFENDANT'S MOTION TO VACATE GUILTY PLEA AND DISMISS INDICTMENT

DAVID ALAN EZRA, District Judge.

The court heard Defendant's motion on January 30, 1995. Ignacio R. Garcia. Esq., appeared on behalf of Defendant; Beverly Wee Samashima, Esq., appeared on behalf of the United States. After hearing argument and reviewing the motion and the supporting and opposing memoranda, the court DENIES Defendant's motion.

### BACKGROUND

On January 1, 1994, United States Drug Enforcement ("DEA") Agents arrested Defendant Nakamoto ("Nakamoto" or "Defendant") for possessing with intent to distribute approximately 440 grams of crystal methamphetamine. Police seized $16,248.00 in U.S. currency and a cellular telephone. The United States indicted Nakamoto on drug charges. Nakamoto pled guilty and cooperated in further investigations. His sentencing was set for December 19, 1994.[1] On that date, this court granted Defendant a continuance to allow briefing on the double jeopardy issues raised by *United States v. $405,089.23 in U.S. Currency,* 33 F.3d 1210 (9th Cir. 1994).[2]

The DEA initiated administrative forfeiture proceedings against the currency and cellular telephone on January 2, 1994 and January 3, 1994. The DEA provided notice of the forfeiture action to Nakamoto on April 4, 1994. Nakamoto admits that he received notice of the forfeiture but did not contest it.

---

1. The United States indicates that Nakamoto's crime and criminal history category would result in a guideline sentencing range of 135 to 168 months.

2. The United States has filed a petition for rehearing and suggestion for rehearing en banc in this case, and the Ninth Circuit recently directed the Appellant to file a response. *See* Order dated December 29, 1994, attached as Exhibit B to the Government's Memorandum.

The DEA issued a declaration of forfeiture on May 20, 1994.

Defendant Nakamoto now moves this court for an order vacating his guilty plea and dismissing the indictment against him. He argues that imposition of punishment for the drug charge would violate the constitutional prohibition against double jeopardy.

## DISCUSSION

■ The concept of double jeopardy has expanded beyond its original formulation. The Double Jeopardy Clause of the Fifth Amendment states "... nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." "The basis of the Fifth Amendment protection against double jeopardy is that a person shall not be harassed by successive trials; that an accused shall not have to marshal the resources and energies necessary for his defense more than once for the same alleged criminal acts." *Abbate v. United States*, 359 U.S. 187, 198–99, 79 S.Ct. 666, 672–73, 3 L.Ed.2d 729 (1959). This basic principle also protects against double punishment. "This Court has many times held that the Double Jeopardy Clause protects against ... multiple punishments for the same offense." *United States v. Halper*, 490 U.S. 435, 439, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989) (citations omitted).

Recently, the Supreme Court held that a civil forfeiture proceeding could constitute punishment, regardless of the "civil" or "criminal" label placed upon it by Congress. *Halper*, 490 U.S. at 446–47, 109 S.Ct. at 1901. In *Halper*, the court held that "[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." 490 U.S. at 448, 109 S.Ct. at 1902.

The Supreme Court has specifically included the civil forfeiture provisions of 21 U.S.C. §§ 881(a)(4) and (a)(7) in its definition of "punishment." *Austin v. United States*, ——— U.S. ———, ———, 113 S.Ct. 2801, 2812, 125

L.Ed.2d 488 (1993). In *United States v. $405,089.23 in U.S. Currency*, 33 F.3d at 1221, the Ninth Circuit held that a civil forfeiture under 21 U.S.C. § 881(a)(6), the narcotics proceeds forfeiture statute, also constitutes punishment.

In *$405,089.23*, the court reasoned that double jeopardy attaches when two elements are present: (1) a separate proceeding, and (2) a second punishment. 33 F.3d at 1216. Both elements must be present; the double jeopardy clause does not bar cumulative punishments imposed in a single proceeding. *Ohio v. Johnson*, 467 U.S. 493, 499–500, 104 S.Ct. 2536, 2541, 81 L.Ed.2d 425 (1984). As to the first element, separate proceedings, the government admits that the administrative forfeiture was itself a separate proceeding. However, it asserts that the proceeding did not involve Defendant Nakamoto, who was not a party, and therefore did not implicate double jeopardy. As to the second element, punishment, the government does not contest that the statutory basis for the forfeiture here has a punitive goal and therefore implicates the Double Jeopardy clause. *Id.* at 1221. Instead, the government argues that the result of an uncontested administrative forfeiture cannot constitute a second punishment.

The procedural provisions of the customs laws govern administrative forfeitures. 19 U.S.C. §§ 1602–1621; 21 U.S.C. § 811(d). Where property falls within the categories specified by 19 U.S.C. § 1607(a), the seizing agency may declare the property forfeited if: (1) it gave proper notice, and (2) no person files a claim to the property within twenty (20) days. 19 U.S.C. § 1608. Upon the filing of a claim and the filing or waiver of a cost bond, the matter is referred to the appropriate United States Attorney's Office for initiation of judicial forfeiture. Therefore, under this regime, a declaration of administrative forfeiture may only be entered in uncontested cases.

Only one circuit court has addressed the question of whether an uncontested administrative forfeiture implicates the Double Jeopardy Clause.[3] In *United States v. Torres*, 28

---

3. Several district courts in this circuit have addressed this question, with varying outcomes.

The parties discuss these decisions and attach

F.3d 1463 (7th Cir.) (Easterbrook, J.), *cert. denied*, — U.S. —, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994), the Seventh Circuit found that double jeopardy was not offended. The court based its reasoning on two grounds. First, it noted that because he did not contest the forfeiture, Torres did not become a party and did not risk a determination of guilt. "There was no trial; the $60,-000 was forfeited without opposition, and jeopardy did not attach. You can't have double jeopardy without a former jeopardy." *Id.* at 1465 (citation omitted). Second, the court stated that Torres' failure to contest the forfeiture left no reason to believe that he even had an interest in the property seized. *Id.* If he lacked an interest, there was no punishment. *Id.* at 1466.[4]

Defendant attempts to distinguish *Torres*, indicating that it was decided before *Department of Revenue v. Kurth Ranch*, — U.S. —, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), where the Supreme Court held that a tax imposed upon marijuana in an administrative proceeding violated the double jeopardy clause. — U.S. at —, 114 S.Ct. at 1948 ("The proceeding Montana initiated to collect a tax on the possession of drugs was the functional equivalent of a successive criminal prosecution.") However, unlike Nakamoto in this case, the Kurths appeared as parties in the proceeding and "contested the assess-ments." *Id.*, — U.S. at — — —, at 1942–43. There was never a question of the Kurths waiving their right to contest the sanction. Therefore, the sound reasoning of *Torres* applies to this case.[5]

There is no question that the extension of double jeopardy protection into the civil arena results in a line-drawing problem. After *Halper*, it is clear that the label "criminal" as applied to proceedings or punishments will not serve to define the limits of double jeopardy protection. The Supreme Court now mandates a search for the punitive element of a given statutory sanction. — U.S. at —, 113 S.Ct. at 2812. In *$405,089.23*, the Ninth Circuit applied *Austin* and reasoned that the statute at issue in that case, the same statute at issue in this case, "focuses on the culpability of the property owner by exempting innocent owners or lienholders" and "tie[s] forfeiture directly to the commission of specified offenses." 33 F.3d at 1221.

Thus, under binding Ninth Circuit authority, there is no doubt that the forfeiture of property in a judicial forfeiture proceeding under 21 U.S.C. § 881(a)(6) constitutes punishment. However, whether the punishment also falls upon a defendant when property seized from him is forfeited presents another question entirely. A court may only address the innocence of the owner in a forfeiture proceeding where the owner appears and

---

several unpublished dispositions to their memoranda on this motion.

4. In *United States v. Amiel*, 995 F.2d 367 (2nd Cir.1993), the Second Circuit discussed in dicta the situation where a valid default judgment is entered in a civil forfeiture proceeding and used the same reasoning as the court in *Torres*:

If an appeal is now barred or if the default judgment is affirmed on appeal, then it would appear that *defendants have no legitimate claim to the seized properties, which would vitiate any claim of "punishment" based on the civil forfeiture.*

995 F.2d at 371–72.

5. At the hearing on this motion, counsel for Defendant added two citations to those cited in his memorandum: *United States v. Millan*, 2 F.3d 17 (2nd Cir.1993), and *United States v. 18755 North Bay Road*, 13 F.3d 1493 (11th Cir. 1994). Neither of these cases aid Defendant here.

In *Millan*, the Second Circuit held that a civil forfeiture was part of the same proceeding as the criminal prosecution. 2 F.3d at 20. It did not, however, expressly hold that if the civil forfeiture was not part of the same proceeding, it would have implicated double jeopardy. *Id.* Even if the court had so held, in *Millan* the defendant contested the administrative forfeiture and subsequently entered into a settlement with the government, in contrast to Nakamoto's failure to contest here. *See id.* at 19.

In *18755 North Bay Road*, the parties also contested the forfeiture. 13 F.3d at 1494–95. As in *Millan*, the court held that the forfeiture fell "within the contours of a single, coordinated prosecution." *Id.* at 1499. On this basis, the court, citing *Millan*, distinguished the concern for abuse by a government dissatisfied with the punishment exacted in the first proceeding, as expressed by the Supreme Court in *Halper*. *Id.* Here, Defendant was not a party to the first proceeding and, without showing an interest in the property, cannot claim to have been punished. Without punishment, there can hardly be said to exist government dissatisfaction with the punishment and subsequent abuse of power in initiating a second proceeding.

claims the property. Therefore, the finding that the statute has a punitive effect does not solve the line-drawing problem when no person claims the property and the sanction is directly applied against no particular person. *Cf. United States v. Stanwood*, 872 F.Supp. 791 (D.C.Or.1994) (jeopardy attaches when the final judgment of forfeiture is entered, not when the property is seized).

While the statute providing for forfeitures has a punitive purpose, the mere existence of a punitive statute does not constitute punishment for double jeopardy purposes unless that statute is applied to an individual.[6] It is clear that the line must be drawn before extending double jeopardy protection to an uncontested administrative forfeiture. To do otherwise would invalidate the use of administrative forfeiture per se. It would also run counter to the rule that only legitimate possessory interests have standing to challenge forfeitures. *United States v. Amiel*, 995 F.2d 367, 371 (2nd Cir.1993), (citing *United States v. Contents of Accounts Nos. 3034504504 and 144–07143 at Merrill, Lynch, Pierce, Fenner and Smith, Inc.*, 971 F.2d 974, 985 (3d Cir.1992), *cert. denied sub nom, Friko Corp. v. United States*, — U.S. —, 113 S.Ct. 1580, 123 L.Ed.2d 148 (1993)). Otherwise, a forfeiture could be used by any defendant to claim that its punitive purpose had been aimed in his direction.[7] Neither the Ninth Circuit in *$405,089.23*, nor the Supreme Court in *Halper, Austin,* and *Kurth*

*Ranch* could have intended such a result. This court will not here extend the concept of double jeopardy so far.

Also relevant is the distinction between the voluntary choice of a guilty plea, to which jeopardy attaches absent waiver, and the voluntary choice to refrain from contesting an administrative forfeiture. The Supreme Court has stated that where a defendant successfully avoids adjudication of guilt, jeopardy will not attach.[8] In *United States v. Scott*, 437 U.S. 82, 98–100, 98 S.Ct. 2187, 2198, 57 L.Ed.2d 65 (1978), the defendant successfully moved for a dismissal of the indictment due to delay. The Supreme Court held that where the defendant himself chooses to avoid a final determination of guilt or innocence, the Double Jeopardy Clause is not offended by a second prosecution. *Id.* The Court based its reasoning not on waiver, but on the reasoning that "the Double Jeopardy Clause, which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice." *Id.*

Here, Defendant does not argue that he did not receive notice. Instead, he made a voluntary choice not to contest the forfeiture. This choice avoided putting his guilt or innocence at issue in a judicial forfeiture proceeding, a separate proceeding involving the defendant as a party and carrying a potential

6. A simple example illustrates this point. Assume that the DEA initiates a successful investigation of a drug production and trafficking operation. At several locations, the DEA seizes a vast array of items, including money and drug paraphernalia. Assume also that the DEA also arrests twenty (20) defendants at one key location, thirty (30) sellers on the street, and the one leader who runs the entire operation. Fifty others who were also involved escape arrest. The DEA initiates administrative forfeiture proceedings against the property seized and complies with the notice provisions mandated by the statute. No one claims any of the property. Against whom does double jeopardy attach? Conceivably, the statute's punitive purpose applies to all fifty-one (51) of the arrestees, and arguably the other fifty (50) not arrested. Still, the only plausible answer is that double jeopardy can attach only when an individual comes forward, lays claim to the property, and converts the uncontested administrative forfeiture into a contested judicial one.

7. Applying the protection of double jeopardy only to those individuals who themselves receive specific notice of the administrative forfeiture does not draw a clear enough line, as makes punishment contingent on the agency's notice determination and creates an incentive for the agency to send notice to no one.

8. This rule is analogous to a rule noted by the United States, namely that a party should not be permitted to manufacture a conviction on a lesser charge in order to escape a conviction on a greater charge. In this case, by not contesting the forfeiture, Defendant would have traded a chance to assert a claim to a cellular telephone and $16,000 for freedom from a potential sentence of eleven years or more. Were the court to hold for Defendant here, under the same reasoning any defendant with no property interest at all could trade that worthless interest for the escape from a prison term simply because he had been notified by the DEA of a forfeiture proceeding.

"punishment" at the end. *$405,089.23*, 33 F.3d at 1221.

■ Because the Defendant chose to forego his opportunity to contest the forfeiture, he was not a party to the forfeiture proceeding and cannot claim an interest in the property. Without an interest in the property, he cannot be said to have been subjected to jeopardy or punished in any way by the administrative forfeiture. Therefore, the uncontested administrative forfeiture does not offend the Double Jeopardy Clause, and, accordingly, the court DENIES the Defendant's motion.

## CONCLUSION

For the reasons stated above, the court DENIES the Defendant's Motion to Vacate Guilty Plea and Dismiss the Indictment.

IT IS SO ORDERED.

**Jerry M. ERICKSON, Plaintiff,**

v.

**Togo D. WEST, Jr., Secretary of the Army, Department of the Army, Defendant.**

**Civ. No. 94–00591 DAE.**

United States District Court, D. Hawaii.

Feb. 15, 1995.

Dale L. Bennett, Law Office of Dale L. Bennett, Honolulu, HI, for plaintiff.

R. Michael Burke, Asst. U.S. Atty., Honolulu, HI, for defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

DAVID ALAN EZRA, District Judge.

Pursuant to Local Rule 220–2(d), the court finds this matter suitable for disposition without oral argument. Plaintiff represents himself in this matter. After reviewing the motion and the supporting and opposing memoranda, the court GRANTS in part and DENIES in part Defendant's Motion to Dismiss.

### BACKGROUND

In 1989 the Plaintiff began working as the installation safety manager, GS–12, at Fort Shafter, Hawaii. Plaintiff worked for Edward Lee, the Major Army Command Safety Director. Lee was born in Hawaii and identifies his race as Chinese. Plaintiff is a white male and was 52 at the time of the conduct at issue. In November 1990 the Plaintiff filed

his first administrative EEO complaint based upon race and age discrimination.

On June 12, 1991, the Plaintiff filed his first formal complaint ("First Complaint"). He alleged that management forced him to take a downgrade to GS–11, excluded him from staff meetings, and refused to provide him with secretarial assistance for meeting for which he was responsible. He followed this complaint with further complaints filed August 23, 1991 ("Second Complaint"), October 1991 ("Third Complaint"), and December 3, 1991 ("Fourth Complaint"). The Second, Third and Fourth complaints alleged a continuing pattern of race, age and reprisal discrimination based on management's alleged soliciting and fabricating of complaints against him. The Third Complaint addressed Plaintiff's "fully successful" performance appraisal, which is commonly recognized as a poor rating. The Fourth Complaint alleged discrimination based upon the issuance of new performance standards, which Plaintiff alleges applied GS–13 standards to his then GS–11 position, and upon the issuance of a formal reprimand for his failure to get approval to meet with an EEO officer.

On December 20, 1991, an Army Civilian Appellate Review Agency ("USACARA") conducted a conference concerning the four complaints. On October 29, 1992, USACARA recommended findings of no discrimination on the First, Second and Third complaints. USACARA recommended a finding of reprisal discrimination on the Fourth Complaint, based on the issuance of a letter of reprimand. The Plaintiff requested an EEOC hearing before an administrative judge ("AJ").

On November 22, 1993, the AJ issued a decision finding discrimination based upon race and reprisal. She recommended that the Plaintiff be retroactively promoted to GS–12 as of the time of his downgrade and awarded back pay and interest accordingly, along with reasonable attorney's fees.

·On January 21, 1994, the Department of the Army Equal Employment Opportunity Compliance and Complaints Review Agency ("EEOCCRA") issued the final agency decision adopting the EEOC AJ's recommended findings and remedial action. EEOCCRA also ordered that all disciplinary actions, including the demotion, be removed from Plaintiff's personnel file. Plaintiff has received all remedies ordered by the AJ and EEOCCRA.

On February 11, 1994, Thomas Lavigne, Esq., submitted an application for attorney's fees to the local EEO office. On February 28, 1994, Elbridge Smith, Esq., submitted an application for attorney's fees to the local EEO office. Plaintiff submitted an application for attorney's fees on behalf of Robert Smith, Esq., to the local EEO office, in addition to an application for personal costs.

On April 21, 1994, the Army issued a final agency decision on the application of Elbridge Smith, and on May 9, 1994, the Army issued a final agency decision on the applications of Lavigne and Robert Smith. Plaintiff received a final agency decision on May 25, 1994.

On June 8, 1994, Plaintiff appealed the failure of the army to send a final agency decision to him directly and the decision to deny fees for the services of Robert Smith. Plaintiff filed his Complaint in the instant action on August 2, 1994. He has not initiated any further administrative EEO informal or formal complaints since his Fourth Complaint filed in December of 1991.

*STANDARD OF REVIEW*

A motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). A complaint should not be dismissed unless it appears to a certainty that plaintiff "would be entitled to no relief under any set of facts that could be proved." *Fidelity Fin. Corp. v. Federal Home Loan Bank,* 792 F.2d 1432, 1435 (9th Cir.1986), *cert. denied,* 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987); *Stender v. Lucky Stores, Inc.,* 766 F.Supp. 830, 831 (N.D.Cal.1991). All allegations of material fact are taken as true and construed in the light most favorable·to the plaintiff. *Stender,* 766 F.Supp. at 831.

■ Pursuant to a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the Court may receive among the forms of competent evidence affidavits to resolve any factual dispute. *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir.1983). The consideration of such evidence does not convert a motion to dismiss into one for summary judgment. *Id.*

## DISCUSSION

Plaintiff's Complaint alleges a continuing pattern of discrimination and that the Defendant is not complying with the agency decision. The Complaint demands a jury trial, as well as injunctive relief and compensatory and punitive damages. Defendant moves to dismiss, arguing that Plaintiff has failed to exhaust his administrative remedies and that his damages claims are not cognizable under applicable federal law.

### I. Failure to Exhaust Administrative Remedies

#### A. 180–Day Bar

■ Federal employees claiming discrimination in federal court must first exhaust their available administrative remedies. *Brown v. General Services Administration*, 425 U.S. 820, 832, 96 S.Ct. 1961, 1967, 48 L.Ed.2d 402 (1976). This requirement is jurisdictional; a federal court may not review discrimination complaints without exhaustion of remedies. *Boyd v. U.S. Postal Service*, 752 F.2d 410 (9th Cir.1985). The requirement is also reasonable; exhaustion of remedies allows the employer an opportunity to investigate allegations, create an administrative record, and informally resolve disputes. *See McRae v. Librarian of Congress*, 843 F.2d 1494, 1496 (D.C.Cir.1988); *Ong v. Cleland*, 642 F.2d 316, 318–20 (9th Cir.1981).

■ Plaintiffs must wait 180 days from the filing of an appeal of a final agency decision before filing a civil action. 42 U.S.C. § 2000e–16(c); *Rivera v. United States Postal Service*, 830 F.2d 1037, 1039 (9th Cir.1987), *cert. denied*, 486 U.S. 1009, 108 S.Ct. 1737, 100 L.Ed.2d 200 (1988). Withdrawing an appeal does not cure the problem created by a premature filing of a civil suit in federal court; it still constitutes a failure to exhaust remedies. *Id.; Tolbert v. United States*, 916 F.2d 245, 247–48 (5th Cir.1990). To hold otherwise would eviscerate the requirement by allowing impatient Plaintiffs to simply withdraw their appeals.

However, the Ninth Circuit has held that this 180–day requirement runs only once, from the first appeal of a final agency decision. *Charles v. Garrett*, 12 F.3d 870, 874 (9th Cir.1993) (rejecting government's argument that plaintiffs must wait 180 days from filing of each appeal). In *Charles*, the Ninth Circuit stated that allowing a new 180–day period to run upon each successive appeal would allow a federal employer to delay access to federal court indefinitely through repeated appeals of decisions. *Id.*

An agency decision is final "only when the agency makes a determination on all of the issues in the complaint, including whether or not to award attorney's fees or costs. If a determination to award attorney's fees is made the decision will not be final until the procedure is followed for determining the amount of the award." 29 C.F.R. § 1613.281. Therefore, the final agency action in this matter did not occur until May 9, 1994. Plaintiff timely appealed this decision to the EEOC on June 8, 1994.

Plaintiff stated two grounds for his appeal: (1) the agency procedure of not sending him the final decisions on fees and costs; and (2) the denial of $2,147 in fees and costs for Robert Smith. Plaintiff did not appeal the merits of the decision and did not seek further damages.

■ Here, the reasoning of *Charles* must be squared with 29 C.F.R. 1614.408, which provides:

A complainant who filed an individual complaint ... is authorized under title VII [and] the ADEA ... to file a civil action in an appropriate United States District Court:

(a) Within 90 days of receipt of the final decision on an individual or class complaint *if no appeal has been filed;* ...

(d) After 180 days from the date of filing an appeal with the Commission if there

has been no final decision by the Commission.

(Emphasis added). While the statute governing exhaustion does not require the appeal that sets the 180 days running to be from a final agency decision, this regulation, 29 C.F.R. 1614.408, clearly prohibits the filing of a civil action if an appeal has been filed after a final agency decision.

In *Charles,* the Ninth Circuit stated that "[t]he only reasonable interpretation of this provision [42 U.S.C. § 2000e–16(c) ] is to permit a complainant to file in district court once 180 days have elapsed from the date of filing the initial charge, or if either party appeals, 180 days from the date the first administrative appeal is filed." 12 F.3d at 874. In order to reconcile 29 C.F.R. 1614.408 with *Charles,* this court must do violence to one of the two, for *Charles* seems to read out the requirement of subpart (a), "if no appeal has been filed." *Charles,* which addresses discrimination in the Navy, does not mention this regulation, which became effective in 1992, prior to the decision in *Charles* but after the events at issue there.

While this court shares the Ninth Circuit's concerns about repetitive appeals and the possible tactical use of such appeals for delay, that is clearly not what is happening in this case, where the Plaintiff and not the government has been appealing. Further, the reasoning in *Charles* does not fit with the language of 29 C.F.R. 1614.408, which was not interpreted in that case. Accordingly, the court applies 29 C.F.R. 1614.408 and finds that the complaint in this action was filed prematurely, within the 180–day period set running by the appeal of the agency's final decision. Further, to allow the filing of a federal action in this case would deprive the EEOC of the opportunity to dispose of the issues raised by Plaintiff on appeal in a timely fashion.

▓ Now that 180 days has run from the filing of Plaintiff's appeal, the Plaintiff may refile his Complaint in accordance with any further action that may have been taken by the EEOC. Plaintiff may not rest on the present Complaint as filed, however, because it was filed prematurely without exhausting administrative remedies. *Cf. Rivera,* 830 F.2d at 1038 (plaintiff erred when he relied on earlier filing although he had not at the time of that filing exhausted his remedies).

### B. Exception for Continuing Violation

▓ While Plaintiff here has not exhausted his remedies, there is an exception to the exhaustion requirement for continuing violations. *Sosa v. Hiraoka,* 920 F.2d 1451, 1456–57 & n. 2 (9th Cir.1990) ("the EEOC must be afforded an opportunity to consider disputes before federal suits are initiated" if " 'claims are *not* so closely related that agency action would be redundant.' " (quoting *Green v. Los Angeles County Superintendent of Schools,* 883 F.2d 1472, 1480 (9th Cir.1989) (further citation omitted))).

▓ Here, Plaintiff's Complaint is devoted to allegations of continuing discrimination and violation of the agency decision. However, the Complaint alleges no specific facts upon which this court could determine whether the complaint has stated a claim for continuing violations. It does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8. Nor does it contain sufficient information for this court to determine its jurisdiction over this matter on the basis of an exception to the exhaustion requirement.

▓ For these reasons, the court would dismiss the Complaint without prejudice to refile now that the time period for the exhaustion of administrative remedies has run. However, as the February 6, 1995 deadline for moving to amend the complaint has only recently passed, and Plaintiff, a pro se litigant, should be given the opportunity to amend his Complaint to cure the defects created by the sparse factual allegations. Plaintiff may now amend his complaint to set forth the specific facts giving rise to his claim for continuing violations.[1] Alternatively, the

---

Plaintiff's claims of noncompliance with the