UNITED STATES of America, Plaintiff,

v.

Julio RAMOS–OSEGUERA,
et al., Defendants.

No. CR–93–0326 DLJ.

United States District Court,
N.D. California.

June 20, 1995.

Mary Pougiales, Assistant U.S. Attorney, Oakland, CA, for the government.

Richard B. Mazer, with the Law Offices of Richard B. Mazer, San Francisco, CA, for Julio Ramos–Oseguera.

James Bustamante, with the law firm Serra, Perelson, Lichter, Doar & Bustamante, San Francisco, CA, for Sotero Ramos–Oseguera.

Paul B. Meltzer, with the Law Offices of Meltzer & Leeming, Santa Cruz, CA, for Roberto Ramirez.

Barry Portman, Federal Public Defender for the Northern District of California and Vicki Young, Assistant Federal Public Defender, for Samuel Robles–Lopez.

## ORDER

JENSEN, District Judge.

At a hearing held June 1, 1995, the Court denied defendants Julio Ramos–Oseguera, Roberto Ramirez, and Samuel Robles–Lopez' motions to dismiss the Superseding Indictment on the grounds of double jeopardy. That same day, defendants filed notices of appeal of the Court's Order. Julio Ramos–Oseguera contended that the Court's denial of his double jeopardy motion was immediately appealable and served to divest the Court of jurisdiction over the case.

At a hearing held June 2, 1995, the Court addressed the question whether defendants' filing of notices of appeal divested the Court of jurisdiction over the case. The Court held that defendants' claims were frivolous and that the Court retained jurisdiction over the case.

This Order memorializes the Court's oral rulings.

## I. THE COURT'S DENIAL OF DEFENDANTS' DOUBLE JEOPARDY MOTIONS

Defendants Julio Cesar Ramos–Oseguera, Sotero Ramos–Oseguera, Roberto Ramirez, and Samuel Robles–Lopez are charged in a sixty-six count Superseding Indictment which, *inter alia*, alleges that each defendant participated in a conspiracy to distribute heroin (21 U.S.C. § 846) and that each defendant violated the substantive offense of distribution of heroin (21 U.S.C. § 841(a)(1)). Defendant Julio Cesar Ramos–Oseguera is individually charged with engaging in a continuing criminal enterprise (21 U.S.C. § 848). Each of the defendants, except Roberto Ramirez, is charged with unlawful possession of a firearm while being an illegal alien (18 U.S.C. § 922(g)(5)) and using a firearm during a drug trafficking crime (18 U.S.C. § 924(c)). The original indictment was filed on June 24, 1993. A superseding indictment was filed on February 9, 1995.[1]

---

1. Maria de Lourdes Reyes–Sandoval was also charged in the Superseding Indictment. Upon motion of defendant Julio Ramos, Maria Reyes' trial was severed from that of the remaining

Jury selection for the trial of Julio Ramos, Sotero Ramos, Roberto Ramirez, and Samuel Robles–Lopez began on May 30, 1995. Following the Court's ruling on these motions, a jury was sworn on June 2, 1995. On May 19, 1995 at the pretrial conference, defendant Julio Ramos filed a motion to dismiss the Superseding Indictment on the grounds of double jeopardy. On June 1, 1995, defendants Ramirez and Robles–Lopez made oral motions to dismiss the claims against them on the grounds of double jeopardy.

## A. *Julio Ramos' Motion to Dismiss*

The issue presented by this motion is whether this criminal prosecution against Julio Ramos is barred by double jeopardy, as a result of a forfeiture proceeding in which the United States forfeited a telephone as property of Maria Reyes after notices to both Reyes and Julio Ramos were uncontested. The Court answers in the negative.

### 1. *Factual Background*

On or about June 17, 1993, federal agents seized a Fujitsu cellular telephone with charger and battery at 3737 Palos Verdes in San Francisco contemporaneously with the arrest of Maria Reyes at that location. The property was seized by DEA agents on the grounds that it was used or acquired as a result of a drug-related offense. Notices of seizure were sent to Julio Ramos and Maria Reyes. Neither Julio Ramos, Maria Reyes, nor any other person filed a claim for the telephone. On October 15, 1993, the United States forfeited the telephone pursuant to 21 U.S.C. § 881. The declaration of forfeiture states that the telephone was seized from Maria Reyes and lists Maria Reyes as the telephone's owner. Julio Ramos is not named in the forfeiture declaration.[2]

On May 19, 1995, Julio Ramos submitted a declaration in this criminal proceeding stating that he had an ownership interest in the cellular telephone.

### 2. *Discussion*

Julio Ramos claims that his criminal prosecution would constitute double jeopardy, as he has already been placed once in jeopardy by the forfeiture of the cellular phone.

At the June 1, 1995 hearing, the Court denied Ramos' motion for two independent reasons: (1) relying, *inter alia*, on *United States v. Torres,* 28 F.3d 1463 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 669, 130 L.Ed.2d 603 (1994) as persuasive authority, the Court held that this uncontested forfeiture does not constitute double jeopardy; and (2) relying on *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the Court found that the forfeiture of this cellular phone was so disproportionate to the harm caused by the alleged conduct underlying the narcotics, firearms, conspiracy, and continuing criminal enterprise charges against Julio Ramos that the forfeiture sanction imposed in this case could not be said to constitute "punishment" within the meaning of the double jeopardy clause.

#### a. *The Effect of an Uncontested Forfeiture*

In *United States v. $405,089.23 U.S. Currency,* 33 F.3d 1210 (9th Cir.1994) ("*405*"), the Ninth Circuit held that civil forfeiture of money connected with conspiracy and money laundering, after the claimants had been convicted and sentenced for those crimes, violated the constitutional prohibition against double jeopardy. In *405*, the criminal conviction preceded the civil forfeiture. The Ninth Circuit emphasized, however, that its holding applied equally to situations in which the sequence is reversed. *Id.* at 1222.

In *405*, the defendant contested the forfeiture. The Ninth Circuit has not addressed the question whether an uncontested civil forfeiture constitutes "jeopardy" for purposes of double jeopardy analysis in cases where the forfeiture proceeding precedes the crimi-

---

defendants and proceeded to trial on April 25, 1995. Reyes asserted a defense of duress, contending that she suffered from battered woman syndrome and was abused by her husband Julio Ramos.

**2.** In his original motion to dismiss, Julio Ramos claimed that the forfeiture of his Corvette automobile also constituted double jeopardy. As the government has subsequently represented and the record establishes, however, the Corvette was never forfeited.

nal trial. The Seventh Circuit, as well as several district courts within the Ninth Circuit, have held that it does not. *See United States v. Torres,* 28 F.3d 1463 (7th Cir.1994); *United States v. Nakamoto,* 876 F.Supp. 235 (D.Hawaii 1995); *United States v. Kemmish,* 869 F.Supp. 803 (S.D.Cal.1994); *United States v. Walsh,* 873 F.Supp. 334 (D.Ariz. 1994). Several district courts have held to the contrary. *See United States v. Plunk,* A94–036 (JWS) (D.Alaska Nov. 17, 1994); *United States v. Pius Aileman,* CR 94–0003 VRW, report and recommendation by Magistrate Judge (March 24, 1995), adopted by district court in substantial part (May 9–11, 1995).

This Court finds the reasoning of *Torres, Nakamoto, Kemmish,* and *Walsh* persuasive. In *Torres,* defendants Torres and Olivares produced $60,000 to pay for three kilogram of cocaine. "It was a trap. The 'sellers' were federal agents; Torres and Olivares lost the money and their liberty." *Id.* at 1464. After seizure, the $60,000 was forfeited in a civil proceeding. Torres received notice providing him the opportunity to make a claim in the civil forfeiture proceeding. He did not. Thus, he did not become a party to the forfeiture proceeding. There was no trial. The $60,000 was forfeited without opposition. Torres was subsequently tried and convicted on the criminal charges. On appeal, he claimed that, by virtue of the double jeopardy clause, the pretrial forfeiture of the $60,000 precluded the sentence of imprisonment.

The Seventh Circuit disagreed, noting that "You can't have double jeopardy without a former jeopardy." *Id.* at 1465 (citing *Serfass v. United States,* 420 U.S. 377, 389, 95 S.Ct. 1055, 1063, 43 L.Ed.2d 265 (1975)). The court held that because Torres was a non-party, he was not at risk in the forfeiture proceeding, and "[w]ithout risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy." *Id.* (quoting *Serfass,* 420 U.S. at 391–92, 95 S.Ct. at 1064–65; *see also Nakamoto,* 876 F.Supp. 235 (D.Hawaii 1995) (noting that "where a defendant successfully avoids adjudication for guilt, jeopardy will not attach"). Indeed, the

court continued, "because Torres did not make a claim in the forfeiture proceeding, we have no reason to believe that he owned or had any interest in the money." *Id.*

The same analysis applies in the instant case. Because Julio Ramos was a non-party to the forfeiture action, he was not "at risk" in the forfeiture proceeding. Consequently, jeopardy never attached. There is also an apparent factual difference between this case and the cited cases. This case appears to be the only one where someone else's property was actually forfeited. As already noted, this phone was forfeited as the property of Title 21 violator Maria Reyes. This circumstance is further, and conclusive, support for the finding that there has been no former jeopardy for Julio Ramos.

Julio Ramos makes the further argument that unlike the defendant in *Torres,* he has claimed in *this* criminal proceeding that he had an ownership interest in the telephone. This is not a material distinction. *Torres's* holding was based on the fact that the defendant had not made a claim in the forfeiture proceeding. In *United States v. Walsh,* 873 F.Supp. 334, 337 (D.Ariz.1994), the district court held that a defendant who had chosen not to contest an administrative forfeiture could not subsequently claim as part of the criminal proceedings that he had in fact been the owner of the forfeited currency. The Court said:

> The time for Walsh to advance a claim of ownership over this property has long since passed. Walsh elected not to be a party to the civil forfeiture proceedings. As such, no determination of his personal culpability occurred. Therefore, without risk of determination of guilt, jeopardy did not attach.

*Id.* Similarly, the time for Julio Ramos to claim that he had a protectable interest in the cellular telephone has long since passed. *See also Nakamoto,* 876 F.Supp. at 239 & n. 6 (pointing up the practical difficulties inherent in determining against whom jeopardy attached were the court to deem a prior uncontested forfeiture proceeding "punishment" for double jeopardy purposes).

As Julio Ramos did not make a claim for the telephone in the civil forfeiture proceed-

ing, was not a party in the action, and did not go through a trial in the proceeding, and the forfeiture at issue was of another person's property, he was never placed in jeopardy.

### b. *Non–Punitive Purpose*

■ As a separate and independent reason to deny the motion, the Court finds that the forfeiture of the cellular phone does not serve a punitive purpose. As such, it does not constitute "punishment" for double jeopardy analysis.

The double jeopardy clause of the fifth amendment states, "[N]or shall any person be subject to the same offence to be twice put in jeopardy of life or limb." "The basis of the Fifth Amendment protection against double jeopardy is that a person shall not be harassed by successive trials; that an accused shall not have to marshall the resources and energies necessary for his defense more than once for the same alleged criminal acts." *Abbate v. United States,* 359 U.S. 187, 198–99, 79 S.Ct. 666, 673, 3 L.Ed.2d 729 (1959). The double jeopardy clause also protects against double punishment. "This Court has many times held that the Double Jeopardy Clause protects against ... multiple punishments for the same offense." *United States v. Halper,* 490 U.S. 435, 439, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989) (citations omitted).

Throughout most of the Supreme Court's history, the Court deferred heavily to the label Congress attached to a particular sanction in analyzing whether the sanction constituted "punishment" for double jeopardy purposes. *United States v. Ward,* 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980); *see 405,* 33 F.3d at 1218. "If Congress indicated a preference that the proceeding be denominated 'civil' rather than 'criminal,' the Court would defer to that preference except in extraordinary circumstances." *405,* 33 F.3d at 1218 (citing *Ward,* 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980)). Therefore, the law previously was clear that civil forfeitures do not constitute "punishment" for double jeopardy purposes. *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 104 S.Ct. 1099,

79 L.Ed.2d 361 (1984)); *see 405,* 33 F.3d at 1218.

In the watershed decision *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) (holding that the imposition of a civil penalty of $2,000 per claim plus twice the government's actual damages and costs against an individual who was previously convicted of submitting 65 false claims to the government constitutes "punishment" for purposes of double jeopardy), the Supreme Court shifted course. The *Halper* Court held that "the labels 'criminal' and 'civil' are not of paramount importance" in determining whether a sanction constitutes punishment for purposes of double jeopardy. The Court held that a civil sanction, in application, "may be so divorced from any remedial goal that it constitutes 'punishment' for the purpose of double jeopardy analysis."

> [A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving retributive or deterrent purposes, is punishment.

*Id.* at 448, 109 S.Ct. at 1901. The Court described its holding as a rule of reason, applicable when a sanction is "overwhelmingly disproportionate to the damages ... caused." *Id.* at 449, 109 S.Ct. at 1902. The Court left to the trial court the discretion to determine the size of the civil sanction the government may receive without crossing the line between remedy and punishment. *Id.* at 450, 109 S.Ct. at 1902; *see also Department of Revenue v. Kurth Ranch,* —— U.S. ——, ——, 114 S.Ct. 1937, 1945, 128 L.Ed.2d 767 (1994) (holding that a so-called civil "penalty" may be remedial in character, and will not be considered punitive for double jeopardy purposes, if it merely reimburses the government for its actual costs arising from defendant's criminal conduct).

Applying *Halper's* analysis, this Court cannot find that the forfeiture of the cellular phone can be considered to be punishment for the same offenses involved in the criminal charges against the defendant in this case. In our criminal justice system proportionality is the heart of just punishment. Julio Ramos faces a punishment of mandatory life imprisonment if he is convicted of the charged

continuing criminal enterprise, as well as a mandatory 105 years if he is convicted of the drug conspiracy and the § 924(c) firearms charges. Defendant Ramos proposes that he has already been punished for these offenses and double jeopardy principles prohibit even his trial for these offenses, let alone any further punishment. Is the economic pain caused by the forfeiture of a used telephone just punishment for these offenses? Of course not. In reciprocal *Halper* terms this is a "sanction" which is "overwhelmingly disproportionate to the damages ... caused." It is the trivial opposite of the excessive sanction. This sanction does serve a remedial purpose by preventing the future use of an instrumentality of past crimes, but it cannot on any common sense basis be said to constitute a retributive or punitive sentence for these offenses.

Accordingly, this Court finds that there has been no punishment for the charged offenses alleged here and that the double jeopardy reasoning of *405* does not require a contrary result. In *405*, the Ninth Circuit held that the forfeiture statutes at issue in the case, 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(A), were by their nature punitive. The court appeared to disclaim reliance on a case-by-case approach in favor of looking to the purpose of the statute as a whole. *See 405*, 33 F.3d at 1220 (citing *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993)). However *Halper*, the precedential base relied on by *405, see* 33 F.3d at 1219, stressed that "the labels 'criminal' and 'civil' are not of paramount importance" in determining whether a sanction constitutes double jeopardy. To declare that a civil forfeiture under 18 U.S.C. § 981 nec-

essarily constitutes punishment *in all circumstances* would be in tension with this principle. When the Court looks to the overall statutory scheme involved here, the conclusion is inescapable that Congress did not intend to create a system of law where proportional punishment for the offenses alleged here can be either the heaviest mandatory minimum sentences in federal law or the loss of a used phone. Nor does the text of these statutes compel such a result.

For these reasons, because the forfeiture of the phone was uncontested and did not serve a punitive purpose, Julio Ramos' double jeopardy motion must be denied.[3]

### B. *Ramirez and Robles–Lopez' Motions to Dismiss*

At the hearing, defendant Roberto Ramirez made an oral motion to dismiss the Superseding Indictment on the grounds of double jeopardy based on forfeiture of property seized on July 17, 1991, August 12, 1991, and April 1, 1992. Defendant Samuel Robles–Lopez made an oral motion to dismiss the Superseding Indictment on the grounds of double jeopardy based on forfeiture of property seized on April 1, 1992. As the record indicates, there is no support for the double jeopardy claims of these defendants.

On July 17, 1991, Ramirez was arrested and $591 was seized by state law enforcement officers. Ramirez was served with a notice of forfeiture the next day at the city jail by the state. In response, Ramirez filed a signed document disclaiming any interest in the money, stating that it belonged to his uncle. Without a property interest in the currency, there can be, of course, no "punish-

---

**3.** Because the Court finds that the uncontested forfeiture does not constitute jeopardy, the Court need not reach the second part of the double jeopardy analysis: whether the claims for which defendant Julio Ramos is now being tried are the "same offenses" for which the phone was forfeited. *See Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *United States v. Dixon,* —— U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). The Court does note, however, the difficult analytical process involved in attempting to determine when the same offenses are involved when the prior proceeding was uncontested. In this ·case, the telephone counts using the forfeited cellular phone would

presumably constitute the "same offense." It is far from clear that the multiple drug distribution, conspiracy, use of a minor and continuing criminal enterprise counts would be considered the "same offenses" just because they are violations of Title 21. The firearms counts alleging violations of 18 U.S.C. § 924(c), although clearly distinguished from a forfeiture based on Title 21 violations, may arguably be drug related in this context, but the firearms charges under 18 U.S.C. § 922(g) are not dependent in any way upon Title 21 elements and cannot in any way be deemed to be the "same offense" which legally underlies the forfeiture in this case.

ment" of Ramirez for double jeopardy purposes.

On August 12, 1991, Ramirez was arrested and $498 was seized by state law enforcement officers. He was served with notice. No claim was filed. On October 1, 1991, the money was forfeited to the State of California.

On April 1, 1992, Robles and Ramirez were arrested and $405 in cash was seized from them as evidence by state law enforcement officers. Receipts were given to both of them. Because no claim was made, the physical evidence was destroyed and the cash was deemed abandoned and transferred to the San Francisco County General Fund.

Like Julio Ramos these defendants made no claim against the seized property in the administrative forfeiture proceedings, and consequently the Court finds that they were not "at risk" in those proceedings for purposes of double jeopardy.

■ Furthermore, the forfeitures of the currency seized from Ramirez and Robles–Lopez were done solely by the state government. The State of California is a separate sovereign for double jeopardy purposes. State court criminal proceedings do not bar subsequent federal prosecutions based on the same conduct. *United States v. Figueroa–Soto*, 938 F.2d 1015, 1020 (9th Cir.1991), *cert. denied*, 502 U.S. 1098, 112 S.Ct. 1181, 117 L.Ed.2d 424 (1992); *United States v. LaMere*, 951 F.2d 1106, 1107 (9th Cir.1991). On a fortiori principles, state civil forfeiture proceedings do not bar subsequent federal criminal proceedings and, accordingly, Ramirez and Robles–Lopez' motions must be denied.

## II. THE COURT'S FINDINGS AS TO "FRIVOLOUSNESS" OF DEFENDANTS' CLAIMS AND RETENTION OF JURISDICTION OVER THE CASE

■ The Supreme Court has held that the denial of a double jeopardy motion is an appealable order under 28 U.S.C. § 1291. *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). "Ordinarily, if a defendant's interlocutory claim is considered immediately appealable under *Ab-

ney*, the district court loses its power to proceed from the time the defendant files its notice of appeal until the appeal is resolved." *United States v. LaMere*, 951 F.2d 1106, 1108 (1991) (quoting *United States v. Claiborne*, 727 F.2d 842, 850 (9th Cir.), *cert. denied*, 469 U.S. 829, 105 S.Ct. 113, 83 L.Ed.2d 56 (1984)). If, however, the district court finds the claim of double jeopardy frivolous, the filing of a notice of appeal by the defendant shall not divest the district court of jurisdiction over the case. *Id.* at 1108 (citing *United States v. Dunbar*, 611 F.2d 985 (5th Cir.1980) (en banc)).

### A. *Defendants' Ramirez and Robles–Lopez' Motions*

■ Defendants Ramirez and Robles–Lopez' claims of double jeopardy are clearly frivolous. As discussed above, not only did defendants not make claims to the forfeited property in the civil proceedings, the forfeitures were carried out by a separate sovereign. In *LaMere*, the Ninth Circuit found frivolous the defendant's claim that his acquittal in state proceedings barred, on double jeopardy grounds, a subsequent federal prosecution based on the same conduct. 951 F.2d at 1107. Similarly, defendants' claims that the state forfeiture bars this federal prosecution is frivolous. Defendants have cited no authority in support of their claim. They allege that state and federal officers were working together on the investigation, but they cite no authority for the proposition that there is a "joint investigation" exception to the separate-sovereign doctrine for purposes of double jeopardy. Furthermore, the Court notes the untimeliness of defendants' motions, made two years after the original indictment and after jury selection had already begun.

### B. *Defendant Julio Ramos' Motion*

■ Although it is arguably a closer question, the Court finds Julio Ramos' claim of double jeopardy frivolous as well. Even apart from the motion's frivolousness, the Court believes that this case does not present the need for divestiture of jurisdiction pending interlocutory appeal.

### 1. *Frivolousness*

Julio Ramos argues that because several district courts have held that a defendant may be placed in jeopardy by a civil forfeiture proceeding even if the defendant does not make a claim to the property, his double jeopardy claim cannot be considered frivolous.

Although the weight of authority favors the proposition that an uncontested forfeiture cannot constitute jeopardy, several district courts have held otherwise in thoughtful opinions. Accordingly, if the administrative proceedings had provided strong evidence of defendant's indicia of ownership of the phone, in spite of the fact that defendant did not contest the forfeiture, it is arguable that the Court should not call the claim "frivolous."

Under the circumstances of this case, however, the Court finds Julio Ramos' claim factually frivolous.[4] In the two cases Ramos relies on in primary support of his motion, *United States v. Plunk*, A94–036 (JWS) (D.Alaska Nov. 17, 1994) and *United States v. Pius Aileman*, CR 94–0003 VRW, report and recommendation by Magistrate Judge (March 24, 1995), the administrative record clearly identified the defendants Plunk and Aileman as the owners of the property that was forfeited. Unlike the defendants in *Aileman* and *Plunk*, the administrative record does *not* establish defendant Julio Ramos as the owner or possessor of the seized property. Maria Reyes alone is listed as the individual from whom the phone was seized. Maria Reyes alone is listed in the order of forfeiture as the owner of the telephone. Although a notice of forfeiture was sent to both Julio Ramos and Maria Reyes identifying each of them as owners, a notice does not constitute evidence of ownership but simply provides potentially interested individuals with an opportunity to contest the forfeiture.

Nothing in the administrative record supports the contention that Julio Ramos had a property interest in the cellular phone. Without Julio Ramos' having such an interest in the phone, the phone's forfeiture cannot constitute "punishment" of him.

Julio Ramos has submitted a declaration in this criminal proceeding stating that he had an ownership interest in the phone. This assertion is not a part of the administrative record. Neither does it set forth specific facts giving rise to an indicia of ownership. Furthermore, the United States has submitted evidence in this proceeding that Maria Reyes was listed as the sole Pacific Bell subscriber at the time the phone was seized, that the phone number was in her name, and that she described herself as the owner in reporting the phone as stolen.

Julio Ramos has not cited any authority for the proposition that an individual *other* than the individual listed as the owner of forfeited property in an uncontested declaration of forfeiture can legitimately assert that the property's forfeiture placed him in jeopardy. Accordingly, under the factual circumstances of this case, where someone else's phone was forfeited, the Court finds Julio Ramos' double jeopardy claim frivolous within the meaning of *LaMere*, 951 F.2d at 1108.

### 2. *Delay and Disruption Balanced Against Irreparable Injury*

Because the Court finds Julio Ramos' double jeopardy motion frivolous, it retains jurisdiction of the case. Even apart from this, the Court believes it would be appropriate to retain jurisdiction under the circumstances of this case.

*Abney* and *LaMere* set forth the general principle that a district court's denial of a motion to dismiss on the grounds of double jeopardy is immediately appealable, and that the filing of a notice of appeal, unless frivo-

---

**4.** At the June 2, 1995 hearing, the United States proffered further evidence indicating the frivolousness of Julio Ramos' claim. The Court did not rely on this evidence for purposes of its original order denying Julio Ramos' motion to dismiss. Because the Court held as a matter of law that this uncontested forfeiture proceeding did not constitute "punishment" for purposes of double jeopardy, the Court did not address in detail the evidence underlying the forfeiture record. For purposes of determining whether the Court retains jurisdiction over the case, however, the Court must determine whether Julio Ramos' double jeopardy claim is "frivolous." The Court has jurisdiction to consider evidence necessary to make such a finding and considers the United States' proffer for this purpose.

lous, ordinarily divests the court of jurisdiction to proceed.

In *Abney,* the Court was confronted with a pretrial order denying a claim of former jeopardy. The defendant in that case had already been tried. He claimed that his pending retrial constituted double jeopardy. The Court held "that pretrial orders rejecting claims of former jeopardy, *such as that presently before us,* constitute 'final decisions' and thus satisfy the jurisdictional prerequisites of § 1291." 431 U.S. at 662, 97 S.Ct. at 2041 (emphasis added).

The *Abney* Court reasoned that the defendant's protection under the double jeopardy clause would be significantly undermined if appellate review of his double jeopardy claim were postponed until after conviction and sentence. *Id.* at 660, 97 S.Ct. at 2040. The Court explained that "the Double Jeopardy Clause protects an individual against being twice *convicted* for the same crime, *and that aspect of the right can be fully vindicated on an appeal following final judgment." Id.* (emphasis added). "However, this Court has long recognized that the Double Jeopardy Clause protects an individual against more than being subjected to double punishments. It is a guarantee against being twice put to *trial* for the same offense." *Id.* at 660–61, 97 S.Ct. at 2040. The Court described the "personal strain, public embarrassment, and expense" of being forced to "run the gauntlet" a second time, and indicated that avoidance of such an injury was the rationale behind permitting interlocutory appeal of double jeopardy denials.

That is not the situation here. Even if this Court is incorrect and Julio Ramos was in fact placed in former jeopardy by virtue of the uncontested civil forfeiture proceeding, this interest "can be fully vindicated on an appeal following final judgment." *Id.* at 660, 97 S.Ct. at 2040. It is not a question of Julio Ramos' being subject to the embarrassment, humiliation and stress of *double trials;* rather it is a question of his being subject to *double punishments.* Although both are double jeopardy claims, the interest involved is conceptually distinct.

The *Abney* Court noted the "delays and disruptions attendant upon intermediate appeal," which are "especially inimical to the effective and fair administration of the criminal law." 431 U.S. at 657, 97 S.Ct. at 2039. The *LaMere* court discussed the countervailing policies at work: On the one hand, is the defendant's interest in avoiding irreparable harm. On the other hand, is the court's interest in avoiding delay and disruption of the criminal trial proceedings. *Abney* and *LaMere* strike the balance generally in favor of a defendant's right to immediate appeal and the concomitant divestiture of the district court's jurisdiction.

*LaMere* notes, however, that the divestiture of jurisdiction rule is not based upon statutory provisions of rules of procedure. Instead, it is a judge-made rule devised to avoid confusion and waste of time. "The rule should not be employed to defeat its purpose." *Id.* at 1108. Thus, it seems that the district court must retain a rational level of discretion to determine whether the general presumption in favor of divestiture of jurisdiction should apply under the particular circumstances of the case.

In the instant case, to stop the proceedings at this point would be "employ[ing] the rule to defeat its purpose." Defendants' motions were brought two years after the original indictment was filed and on the eve of trial. Scheduling this complex, multi-defendant trial, with an estimated length of six weeks has been a carefully considered process. The Court has rescheduled several other trials to accommodate this trial. Extensive efforts to arrange witnesses and court personnel schedules for purposes of this trial have been undertaken. Trials in other courts have been affected as well, as some of the counsel in this case are also counsel in those cases. Stopping proceedings at this point would significantly delay and significantly disrupt this criminal trial, as well as the overall management of the available trial time of this Court in all its pending cases.

To weigh against this interest, defendant Ramos does *not* have at stake *Abney* 's "potential right not to be tried a second time" which would be irreparably harmed by proceeding to trial. Rather, his potential double

punishment interests could be fully vindicated post-trial in this case.

## III. CONCLUSION

For the above reasons, the Court DENIES defendants Julio Ramos, Roberto Ramirez, and Samuel Robles–Lopez' motions to dismiss the Superseding Indictment on the grounds of double jeopardy based on prior uncontested forfeitures. The Court FINDS that defendants' motions are frivolous within the meaning of *United States v. LaMere,* 951 F.2d 1106, 1108 (1991). The Court HOLDS that it retains jurisdiction over these proceedings.

IT IS SO ORDERED.